**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MACTEC, INC.,

      Plaintiff - Appellant,

v.

STEVEN GORELICK,

      Defendant - Appellee.

Nos. 03-1290, 03-1378

---

**Appeal from the United States District Court**
**for the D. Colo.**
**(D.C. Nos. 02-M-1456, 02-M-1319)**

---

F.T. Davis, Jr., McKenna Long & Aldridge LLP, Washington, DC (Philip D. Bartz, Donna M. Donlon, McKenna Long & Aldridge LLP, Washington, DC, Russell O. Stewart, Patrick Madigan, Faegre & Benson LLP, Denver, CO, with him on the briefs), for Plaintiff-Appellant.

Seth P. Waxman, Wilmer Cutler Pickering LLP, Washington, DC (Johnathan E. Nuechterlein and Todd Zubler with him on the briefs), for Defendant-Appellee.

---

Before **EBEL** and **HENRY**, Circuit Judges, and **WHITE**, District Judge.[*]

---

**EBEL**, Circuit Judge.

---

[*]Honorable Ronald A. White, District Court Judge, Eastern District of Oklahoma, sitting by designation.

This case involves a contract dispute over payment of royalties for a patented invention. The parties to the contract differed as to the meaning of a contractual term and, pursuant to the agreement, arbitrated their dispute. After a hearing, the arbitrator found for Defendant Gorelick and awarded $4.5 million. Plaintiff MACTEC, Inc. filed an application in district court to vacate the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 (2000) ("FAA"). Along with that application, MACTEC filed a declaratory judgment action on the grounds that the arbitrator's interpretation of the disputed contractual term constituted illegal patent misuse. In separate orders, the district court denied the application to vacate and dismissed the declaratory judgment action. MACTEC appealed both decisions to this court, and we consolidated the appeals for a hearing before a single panel.

As a matter of first impression in this circuit, we conclude that a non-appealability clause in an arbitration agreement that forecloses judicial review of an arbitration award beyond the district court level is enforceable. Due to the presence of such a clause in the instant arbitration agreement, we hold that we lack jurisdiction over MACTEC's appeal from the district court's denial of the application to vacate the arbitration award and DISMISS the case.

Regarding MACTEC's appeal from the dismissal of its declaratory judgment action, we conclude that the doctrine of res judicata bars the suit and we AFFIRM the district court's dismissal.

## BACKGROUND

### I. Factual history.

#### A. Development and assignment of the NoVOCs technology

While a professor at Stanford University, Defendant-Appellee Steven Gorelick ("Gorelick") and one of his colleagues, Haim Gvritzman ("Gvritzman"), developed a new method for removing volatile organic contaminants from groundwater ("the NoVOCs technology"). What was unique about this technology is that it was designed to remove the contaminants in situ, or while the water was still underground, by using processes known as vapor stripping and gas pumping.

In 1991, Gorelick and Gvritzman assigned "any right, title, and interest," in the NoVOCs technology to Stanford, including the right to seek a patent. In return for their assignment, Gorelick and Grivtzman each received a one-sixth share of net royalty income, with the remaining two-thirds royalty going to the university. Stanford subsequently applied for, and received, a patent for the NoVOCs technology and has owned that patent ever since.

In 1992, Gorelick formed a company called NoVOCs, Inc., ("NoVOCs") with the intention of developing profitable wells that used the NoVOCs technology. To that end, NoVOCs obtained an exclusive license from Stanford to use the patented technology in exchange for a series of annual royalties. Gorelick was the sole shareholder and manager of NoVOCs.

In 1994, Gorelick sold all of his shares in NoVOCs to a company called EG&G, pursuant to a stock purchase agreement. In return for the stock, EG&G agreed to pay Gorelick an up-front payment of just under $3.3 million. In addition, EG&G agreed to give Gorelick installment payments of (1) twenty-five percent of future revenue derived from licenses or sub-licenses of the NoVOCs technology; and (2) $3000 for each well EG&G drilled using the NoVOCs technology. By acquiring all of Gorelick's stock, EG&G became the exclusive license holder of Stanford's patent and thereby assumed NoVOCs' obligations to pay royalties to the university. The stock purchase agreement provided that all disputes arising under the agreement would be governed by California law and would be subject to arbitration. Two aspects of the stock purchase agreement are particularly relevant to this appeal: First, the agreement specifically excluded from the scope of arbitrable issues any disputes relating to patent invalidity or infringement. Second, the agreement provided that any judgment upon the award rendered by the arbitrator would be final and nonappealable.

**B.      Entrance of MACTEC and subsequent re-negotiations**

In 1997, EG&G agreed to sell certain of its assets to Plaintiff-Appellant MACTEC, Inc. ("MACTEC") including its stock in NoVOCs (and, by implication, NoVOCs' license to Stanford's patent over the NoVOCs technology). In a separate written instrument, MACTEC became the successor-in-interest to the stock purchase agreement between EG&G and Gorelick, expressly assuming all of EG&G's payment obligations to Stanford and Gorelick.

In 1998, MACTEC, through one of its LLC subsidiaries, began using a different method of in situ groundwater treatment in some of its wells, known as "UBV" technology.[1]  Because the NoVOCs and UBV technologies overlapped, MACTEC was unsure as to whether the use of the UBV technology would trigger the $3000 per-well royalty obligation to Gorelick it had assumed in the stock purchase agreement.  As a result, MACTEC approached Gorelick with the intention of re-negotiating the royalty payments.

The parties eventually agreed in writing to reduce Gorelick's royalty payment to $1500 for each "remediation well" that was installed by the LLC.  For remediation wells not installed by the LLC, but rather by another entity under the MACTEC umbrella, Gorelick would continue to receive his original $3000 payment.  The term "remediation well" is defined in the document as "any hole

---

[1]In the record, this technology is also referred to as "IEG technology."

that (i) has been dug, drilled, or otherwise installed, or (ii) which existed and has been converted in use, and that is employed or intended for the partial or complete removal treatment of subsurface contaminants." Nowhere in the written agreement did MACTEC condition Gorelick's payment on a given well's use of NoVOCs or UBV technology.

## C. Royalty payment dispute

For the next two years, Gorelick received occasional payments from MACTEC, ranging from $1500 to $4500. Gorelick received the final payment on November 15, 2000. One month later, Gorelick learned from Stanford that MACTEC had canceled its licensing agreement for the NoVOCs technology. Gorelick then called executives at MACTEC who stated that since their relationship with Stanford had terminated, they no longer had royalty obligations to Gorelick.

Gorelick responded that his agreement with MACTEC was a separate legal obligation which he expected MACTEC to honor. In addition, Gorelick asked MACTEC for specific information regarding remediation wells for which he was entitled to receive payment because he felt that there had been inadequate reporting throughout the whole process. MACTEC did not provide the requested information, and instead alleged that the NoVOCs technology had caused the company as much as $3 million in damages.

## II. Procedural history.

On August 6, 2001, Gorelick filed a demand for arbitration to recover payments under the stock purchase agreement. During discovery, Gorelick became aware of a number of wells that MACTEC drilled but for which it never paid him royalties under the contract. These wells eventually became the central issue in the controversy. MACTEC maintained that these wells were drilled using only public-domain technology, not the NoVOCs or UBV technology. As a result, it argued that it was not required to pay Gorelick the royalty payments. Gorelick responded by pointing to the plain language of the 1998 amendment to the stock purchase agreement, which makes no distinction between NoVOCs wells and other types of wells.

### A. Preliminary issues before the arbitrator

At the arbitration, MACTEC sought to introduce extrinsic evidence of the parties' intent over the meaning of the term "remediation well" to support its position that the royalty payments only applied to wells involving NoVOCs or UBV technology. Both sides briefed and argued the issue before the arbitrator. The arbitrator felt that extrinsic evidence of intent was only relevant if one of the contract terms was ambiguous. Finding no ambiguity in the contract, the arbitrator excluded all extrinsic evidence of the parties' intent.

MACTEC also raised two affirmative defenses in its hearing brief (which was filed only a few days before the actual hearing). First, MACTEC claimed that Gorelick's interpretation of the contract constituted patent misuse under Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100, 136 (1969). Second, MACTEC argued that Gorelick's patent was effectively invalid because the European Patent Office concluded that the technology was not based on an "inventive step."

Gorelick, in his hearing brief, filed a motion to strike these two defenses. Gorelick argued that the defenses were not timely raised because they were not included in MACTEC's specification of defenses, filed on April 1, 2002 (pursuant to the arbitrator's scheduling order). After hearing argument, the arbitrator issued the following oral ruling:

> [T]he motion to strike is granted on several bases. Number one, we had a clear scheduling order. And I believe, if I'm accurate, that all claims and defenses had to be asserted in writing by April 1st of this year. That was not done.
> Secondly, even if it weren't an issue of failure to specify on time, you can't bring up new defenses in a case where there's been as much discovery and motions as there have been in this case. You can't bring up new defenses a week or five days before trial.
> And thirdly, invalidity of the patent is beyond my jurisdiction. That's a federal issue, and we're not going to decide the patent issues here. If there was an invalidity of the patent, you've got a right to file a lawsuit in federal court. Those two issues are out of this case, period, okay?

**B.     Arbitrator's award and district court review**

At the conclusion of the four-day hearing, the arbitrator found for Gorelick and awarded approximately $4.5 million in damages.  Pursuant to the stock purchase agreement, MACTEC sought review before a federal district court and filed an application to vacate the arbitrator's award pursuant to the FAA, 9 U.S.C. § 10.  In support of its application, MACTEC advanced three primary arguments: (1) it was improper for the arbitrator to exclude extrinsic evidence relating to the intent of the parties; (2) the court should not have struck the patent misuse defense; and (3) enforcement of the award would be patent misuse and would therefore be illegal.  These actions, MACTEC argued, required vacatur under 9 U.S.C. § 10(a)(3) and on public policy grounds.

After considering MACTEC's arguments, the district court held that: (1) the arbitrator did not violate 9 U.S.C. § 10(a)(3) by either (a) granting the motion to strike the defense of patent misuse, or (b) refusing to hear evidence of the parties' intent; and (2) it was not a patent misuse (or a violation of public policy) to enforce the arbitration award.

**C.     The declaratory judgment action**

Two weeks after filing its application to vacate the arbitration award, MACTEC filed a complaint in the same district court seeking a declaratory judgment that Gorelick's (and, by implication, the arbitrator's) interpretation of

the contract constituted patent misuse. Gorelick moved pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss, arguing, inter alia, that (1) the action was barred by res judicata; and (2) MACTEC failed to state a claim. In a one-page order issued the day after denying MACTEC's application to vacate the arbitration, the district court dismissed the declaratory judgment action with prejudice. The court did not expressly give its reasoning, stating only that it was acting for the reasons set forth in the earlier order denying MACTEC's application to vacate.

MACTEC subsequently appealed both decisions to this court.[2] In addition to his opening brief, Gorelick has filed a motion to dismiss for lack of appellate jurisdiction, which is a matter of initial concern before the court.

## DISCUSSION

### I. Gorelick's motion to dismiss the arbitration appeal for lack of appellate jurisdiction.

Ordinarily, this court's jurisdiction to consider an appeal from a district court's confirmation of an arbitration award arises under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(D). The jurisdictional problem in this case arises from the fact

---

[2]For clarity, when referring to MACTEC's appeal of the order confirming the arbitration award (10th Cir. Docket No. 03-1378), we will use the term "the arbitration appeal." When referring to MACTEC's appeal of the order dismissing its declaratory judgment action (10th Cir. Docket No. 03-1290), we will use the term "the declaratory judgment appeal."

that in the stock purchase agreement, the provision dealing with arbitration

contained a non-appealability clause. It states, in relevant part:

> Judgment upon the award rendered by the arbitrator shall be final and nonappealable and may be entered in any court having jurisdiction thereof.

Therefore, the question before us is whether such a provision is enforceable and, as a result, deprives this court of appellate jurisdiction.

As a general rule, judicial review over an arbitration award is very limited. The FAA, 9 U.S.C. § 10(a), lists only four situations in which it is appropriate at the district court level to vacate an arbitration award: (1) where the award was the product of corruption or fraud; (2) where there was evident partiality or corruption on the part of the arbitrator; (3) where the arbitrators were guilty of misconduct in refusing, upon sufficient cause shown, to postpone the hearing or hear pertinent and material evidence; and (4) where the arbitrator exceeded his powers. In addition, the Supreme Court has held that vacatur is also appropriate when the arbitrator demonstrates a "manifest disregard" for the law. Wilko v. Swan, 346 U.S. 427, 436-437 (1953), overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 485 (1989); see also Hoeft v. MVL Group, Inc., 343 F.3d 57, 64 (2d Cir. 2003). As for appellate review, the FAA merely provides that decisions made under § 10(a) may be appealed. 9 U.S.C. § 16. The statute is silent on whether such an appeal is barred if the

parties agree that the district court's judgment confirming or vacating the award is to be non-appealable.

This court considered a similar issue in Bowen v. Amoco Pipeline Co., 254 F.3d 925 (10th Cir. 2001). In that case, the parties, pursuant to a prior agreement, arbitrated a dispute over damages caused by an oil pipeline leak. Id. at 927-28, 930. The arbitration panel found for the plaintiff and awarded damages. Id. at 930. Thereafter, the plaintiff sought, and received, a confirmation of the award from the district court. Id. The defendant appealed, claiming that the arbitrators exceeded their powers and acted in manifest disregard of the law. Id. at 930, 932.

The plaintiff moved to dismiss the appeal for lack of jurisdiction, citing a provision in the arbitration agreement that stated that the district court's ruling on the award was to be "final." Id. at 930. We noted in dicta that "although parties to an arbitration agreement may eliminate judicial review by contract, their intention to do so must be clear and unequivocal." Id. at 931 (citing Dep't of Air Force v. Fed. Labor Relations Auth., 775 F.2d 727, 733 (6th Cir. 1985); Aerojet-Gen. Corp. v. Am. Arbitration Ass'n, 478 F.2d 248, 251 (9th Cir. 1973)). We held that the parties' agreement to make the district court's judgment "final" did not clearly evince an intent to waive all appellate review, stating:

> In fact, the very statute from which we derive our jurisdiction, 28 U.S.C. § 1291, grants appellate courts jurisdiction from "all final decisions of the district courts." Hence, by agreeing that the district

- 12 -

court's ruling shall be final, the parties have merely reinforced the appellate jurisdiction conferred by § 1291.

Bowen, 254 F.3d at 931.  As a result we denied the plaintiff's motion to dismiss the appeal.  Id. at 930.

In the instant case, the stock purchase agreement states not only that the district court's judgment shall be final, but also that it shall be "nonappealable." As a result, Gorelick relies heavily on our dicta in Bowen to argue that the instant clause should be held to have waived all judicial review over the district court's confirmation of the arbitration award.

In a separate portion of Bowen, however, we held that the parties may not contractually expand the standard of judicial review to allow the district court to vacate the award for insufficient evidence.  254 F.3d at 935, 937.  In so doing, we noted that "[w]hen Congress passed the Act in 1925, it did so with the primary goal of changing the judiciary's refusal to enforce arbitration clauses in private contracts."  Id. at 933.  This policy notwithstanding, we refused to enforce the parties' agreement to permit judicial review of an arbitrator's decision based on sufficiency of the evidence.  Id. at 935, 937.  Our decision was rooted in another policy goal of the FAA: "[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  Id. at 935 (alteration in original) (quotation omitted).

We would reach an illogical result if we concluded that the FAA's policy of ensuring judicial enforcement of arbitration agreements is well served by allowing for expansive judicial review after the matter is arbitrated. . . . Contractually expanded standards, particularly those that allow for factual review, clearly threaten to undermine the independence of the arbitration process and dilute the finality of arbitration awards . . . .

Id. We ultimately framed our Bowen holding in broad terms: "We agree and hold that parties may not contract for expanded judicial review of arbitration awards." Id. at 937.

From this holding, one might argue that if Bowen expressly forbade private expansion of judicial review, it might also, by implication, prohibit private restriction (or elimination) of judicial review. After all, to justify our refusal to enforce the parties' contractual provisions expanding judicial review, we described the Supreme Court's jurisprudence in this area as suggesting "that the FAA is more than a collection of default rules, which parties may alter with complete discretion." Id. at 935. But to make such an argument ignores our dicta in the jurisdictional section of the decision, that "parties to an arbitration agreement may eliminate judicial review by contract" so long as they clearly and unequivocally indicate their intention to do so. Id. at 931.

How, then, do we reconcile our stated willingness to accept private restrictions on judicial review with our express holding that private expansions on judicial review are unenforceable? Fortunately, the panel in Bowen solves this

- 14 -

dilemma: "The key question is whether the alternate rule conflicts with the federal policies furthered by the FAA." Id. at 935. If the fundamental policy behind the FAA is to reduce litigation costs by providing a more efficient forum, it makes sense to uphold contractual provisions that support that aim while striking down provisions that subvert it.

This is not to say that we would uphold any and all private restrictions on judicial review over an arbitrator's award. In Hoeft, the parties' agreement provided that the arbitrator's decision was not "subject to any type of review or appeal whatsoever." 343 F.3d at 63. After the arbitrator found for the plaintiff, the defendant successfully persuaded the district court to vacate the award on the grounds that the arbitrator manifestly disregarded the law. Id. at 61, 63. On appeal, the plaintiff argued that the non-appealability clause should have barred the district court from examining the substance of the arbitrator's decision because the parties had expressly agreed that the arbitrator's award would not be subject to any sort of judicial review. Id. at 63. The Second Circuit held that a non-appealability provision cannot deprive the federal courts of the ability to apply the standards set forth in 9 U.S.C. § 10(a) or Wilko. Hoeft, 343 F.3d at 66. The court noted that the plaintiff's position was internally inconsistent: the plaintiff essentially argued that he should be entitled to the benefits of judicial confirmation of the award without incurring the risk of vacatur under § 10(a)(3).

Id. at 64.  This would, the court argued, turn the district court's involvement with the case into nothing more than a rubber stamp of the arbitration award.  Id.  The court's overarching concern was that if the federal courts were to give the stamp of legitimacy to the arbitrator's decisions (by confirming his award), they must also retain the right to abrogate that award (if his conduct falls within the narrow parameters for vacatur).  See id.

There is a fundamental difference between the instant case and Hoeft.  In Hoeft, the non-appealability clause applied to a district court's review of the arbitrator's award.  343 F.3d at 63.  Here, on the other hand, the clause applies only to an appellate court's review of the district court's judgment (presumably confirming or vacating the arbitrator's award).  As a result, none of the policy concerns implicated by Hoeft are present in this case.  The agreement here preserves district court review under 9 U.S.C. § 10(a)(3), and while an unsatisfied defendant would not be able to appeal a district court order denying his application to vacate the award, so too would an unsatisfied plaintiff be unable to contest a district court's vacatur of an arbitration award in plaintiff's favor.  From the parties' perspective, then, the risks of a negative outcome resulting from the non-appealability clause are borne equally by both sides.  What we have here is something less than full judicial review of the arbitrator's decision; but we do not have a situation in which there is no judicial review at all, nor a situation where a

court is asked to enforce an arbitration award without being given the authority to review compliance of that award with the FAA. It is, in a sense, a compromise whereby the litigants trade the risk of protracted appellate review for a one-shot opportunity before the district court.[3] Indeed, courts routinely enforce agreements that waive the right to appellate review over district court decisions. See 15A Charles Alan Wright et al., Federal Practice and Procedure § 3901, at 18-19 (2d ed. 1992) [hereinafter "Wright & Miller"]. We see no reason to treat district court decisions concerning arbitration awards differently than any other kind of district court judgment.

Thus, consistent with our dicta in Bowen, we hold that contractual provisions limiting the right to appeal from a district court's judgment confirming or vacating an arbitration award are permissible, so long as the intent to do so is clear and unequivocal. Here, the parties' contract expressly provided that the district court's judgment would be both "final" and "nonappealable." While use of the term "final" would not, by itself, be enough to convey an intent to

_____

[3]MACTEC cites Team Scandia, Inc. v. Greco, 6 F. Supp. 2d 795, 798 (S.D. Ind. 1998), in support of its argument that a non-appealability clause does not foreclose judicial review of an arbitration award on the grounds set forth by the Federal Arbitration Act. Like Hoeft, however, Team Scandia deals only with the effect of such a clause on the district court's ability to review the arbitrator's award. Id. at 798. It does not deal with the effect of a non-appealability provision that affects only the appellate court's ability to consider the judgment of a district court that confirms or vacates an arbitrator's award.

eliminate appellate rights, see Bowen, 254 F.3d at 931, inclusion of the term "nonappealable" serves this purpose.

Accordingly, Gorelick's motion to dismiss the arbitration appeal for lack of jurisdiction is GRANTED. This leaves only our consideration of the declaratory judgment appeal.

## II. Whether MACTEC's declaratory judgment appeal is barred by the doctrine of res judicata.

As noted above, in addition to its application to vacate the arbitration award, MACTEC contemporaneously sought, in a separate legal proceeding before the same district court, a declaration that Gorelick's (and, by implication, the arbitrator's) interpretation of the contract permitted Gorelick to collect royalties on unpatented technologies and therefore constituted patent misuse.[4] Although framed as an illegality of contract issue, MACTEC originally raised this argument at the arbitration. That is, MACTEC claimed that Gorelick's

---

[4]"Patent misuse occurs where the patent owner attempts to extend the impact of his patent beyond its proper scope. . . ." John Gladstone Mills et al., Patent Law Basics § 12:8 (2004). For example, the owner of a patented salt canning machine who requires licensees to use (and thus purchase) the owner's unpatented salt tablets in the machine as a condition of the license commits patent misuse. See e.g., Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 491-92 (1942); see also Zenith Radio, 395 U.S. 100, 138-39 (1969) (holding that conditioning a patent license on royalty payments for products which do not use the patented technology amounts to patent misuse). Generally speaking, patent misuse is an affirmative defense raised in response to an allegation of patent infringement. Lawrence M. Sung & Jeff E. Schwartz, Patent Law Handbook § 4:8 (2004).

interpretation of the contract would amount to patent misuse and as a result, would be an illegal contract which would be unenforceable under basic contract law principles. The arbitrator ruled that MACTEC could not assert a patent misuse defense because (1) MACTEC failed timely to file its defense; and (2) because issues of patent invalidity were, by the terms of the arbitration agreement, beyond the scope of arbitrable issues.

MACTEC then re-asserted this argument before the district court in its application to vacate the arbitration award, arguing that since the arbitration award permitted patent misuse, it must be vacated on public policy grounds. See Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co., 119 F.3d 847, 849 (10th Cir. 1997) (noting that courts may vacate arbitration awards that violate public policy). The district court considered and rejected this argument, based on its conclusions that Gorelick was never a patent holder of the NoVOCs technology, the payments were voluntary, and the agreement was not a patent license.

When MACTEC filed its declaratory judgment action, Gorelick moved to dismiss under Fed. R. Civ. P. 12, arguing, inter alia, that the suit was barred by res judicata. Although the district court did not base its dismissal of the suit on

res judicata,[5] we nevertheless consider it as an alternate ground of affirmance because it was adequately raised below. See Blum v. Bacon, 457 U.S. 132, 138 n.5 (1982).

Thus, the precise issue before our court is whether the arbitration award itself (or the district court's subsequent confirmation of the award) precludes MACTEC's subsequently-filed declaratory judgment action. The application of res judicata is a question of law which we review de novo. Satsky v. Paramount Communications, Inc., 7 F.3d 1464, 1467-68 (10th Cir. 1993).

The doctrine of res judicata, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment. Id. at 1467. Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits. Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards, 314 F.3d 501, 504 (10th Cir. 2003). If these requirements are met, res judicata is appropriate unless the party seeking to avoid preclusion did not have a

---

[5]The district court's dismissal order stated only that it was dismissing the declaratory judgment action for the reasons stated in the order denying the application to vacate the arbitration award.

"full and fair opportunity" to litigate the claim in the prior suit.  Yapp v. Excel

Corp., 186 F.3d 1222, 1226 n.4 (10th Cir. 1999).[6]

Here, it is undisputed that the parties to the arbitration and the declaratory

judgment were the same.  As for finality, a valid and final award by arbitration

generally has the same effect under the rules of res judicata as a judgment of a

court.  Restatement (Second) of Judgments § 84(1) & cmt. b (1980).  Indeed,

> [i]f any party dissatisfied with the award were left free to pursue
> independent judicial proceedings on the same claim or defenses,
> arbitration would be substantially worthless.  Unless the express
> terms of the agreement or the peculiar custom of a trade dictate
> otherwise, therefore, subsequent judicial proceedings on the same
> claim or defenses ordinarily should be precluded.  And so the courts
> rule.

18B Wright & Miller, supra, § 4475.1 at 509; but cf. McDonald v. City of West

Branch, 466 U.S. 284, 292 (1984) (holding that in an action under 42 U.S.C. §

1983, a federal court should not afford res judicata effect to an arbitration award

brought pursuant to a collective-bargaining agreement because of the special

federal rights that a § 1983 action is designed to protect).

---

[6]In a number of our cases, we have characterized the "full and fair opportunity to litigate" as a fourth requirement of res judicata.  See, e.g., Plotner v. AT&T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000).  However, as we noted in Yapp, the absence of a full and fair opportunity to litigate is more appropriately treated as an exception to the application of claim preclusion when the three referenced requirements are met.  Yapp, 186 F.3d at 1226 n.4.

Here, MACTEC has not challenged whether the arbitration award (or the district court's confirmation thereof) was final, but rather whether the award may be appealed to this court. The appealability of a judgment, however, does not hinder its preclusive effect. See 18A Wright & Miller, supra, § 4433, at 78-85 (noting general rule that a final judgment from a lower court carries res judicata effect even though it is still subject to review by an appellate court).

Identity of the cause of action is also present in both suits. Wilkes, 314 F.3d at 504. To determine what constitutes a "cause of action" for preclusion purposes, this court has adopted the "transactional approach" found in the Restatement (Second) of Judgments § 24. Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir. 1988). Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction. Id. A contract is generally considered to be a "transaction" for claim preclusion purposes. Id. at 1336.

Here, MACTEC's allegations of patent misuse clearly arise out of the same contractual transaction as the underlying arbitration – the execution of the stock purchase agreement between Gorelick and MACTEC (as EG&G's successor-in-interest) and the subsequent renegotiation of the agreement's terms in 1998. Thus, the third prong of claim preclusion is met.

However, MACTEC contends that it did not have a full and fair opportunity to raise the patent misuse defense at the arbitration. This is because, according to MACTEC, the arbitrator refused to allow MACTEC to present a patent misuse defense because it ruled that such issues were beyond the scope of the arbitration. Because the arbitrator was jurisdictionally barred from considering its patent misuse defense, MACTEC argues that it never had the opportunity to litigate this claim.

But this argument ignores the fact that MACTEC had a second chance to assert its patent misuse theory before the district court in its application to vacate the arbitration award. Indeed, MACTEC took advantage of this opportunity, arguing in its written motion that the arbitrator's award permitted patent misuse and should thus be vacated on public policy grounds. Furthermore, the district court considered and rejected this argument on the merits. Once the district court issued its decision, any subsequent litigation raising patent misuse was precluded. As we have noted above, the district court's decision to confirm the arbitration award (over MACTEC's patent misuse objections) was nonappealable. Accordingly, the declaratory judgment action is barred by res judicata.

**CONCLUSION**

For the reasons stated above, the arbitration appeal (No. 03-1378) is DISMISSED for lack of jurisdiction. As to the declaratory judgment appeal (No. 03-1290) we AFFIRM the judgment of the district court dismissing the case.