**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BP AMERICA PRODUCTION
COMPANY,

      Plaintiff - Appellee/Cross-
      Appellant,

v.

CHESAPEAKE EXPLORATION,
LLC; CHESAPEAKE
INVESTMENTS, an Oklahoma limited
partnership,

      Defendants - Appellants/Cross-
      Appellees.

Nos. 13-6108 and 13-6122

---

BP AMERICA PRODUCTION
COMPANY,

      Plaintiff - Appellee,

v.

CHESAPEAKE EXPLORATION,
LLC; CHESAPEAKE
INVESTMENTS, an Oklahoma limited
partnership,

      Defendants - Appellants.

No. 13-6185

Greg McKenzie of Gregory A. McKenzie, P.C., Edmond, Oklahoma, (Joseph H. Bocock and Kymala B. Carrier of McAfee & Taft A Professional Corporation, Oklahoma City, Oklahoma; and Joshua C. Greenhaw of Mee Mee Hoge & Epperson, PLLP, Oklahoma City, Oklahoma, with him on the briefs), for Defendants - Appellants/Cross Appellees.

Leslie Lynch, (Rob F. Robertson and Diana Tate Vermeire with her on the briefs) of GableGotwals, Oklahoma City, Oklahoma, for Plaintiff - Appellee/Cross Appellant.

Before **KELLY**, **LUCERO**, and **HOLMES**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendants-Appellants Chesapeake Exploration, L.L.C., and Chesapeake Investments ("Chesapeake") appeal from a district court judgment awarding Plaintiff-Appellee BP America Production Company ("BP") $22,265,302 plus interest (No. 13-6108), and from a district court order compelling Chesapeake to pay $1,403,669.38 in attorneys' fees and disbursements (No. 13-6185). BP cross-appeals a district court order confirming an arbitration award (No. 13-6122).[1]

---

[1] BP's cross-appeal related to attorneys' fees (No. 13-6194) was dismissed by stipulation. BP Am. Prod. Co. v. Chesapeake Exploration, L.L.C., No. 13-6194 (10th Cir. Nov. 18, 2013).

Our jurisdiction arises under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). We affirm both awards in Chesapeake's direct appeals and dismiss BP's cross-appeal.

Background

This dispute arises out of a purchase and sale agreement ("PSA") entered into by Chesapeake as seller and BP as purchaser of certain oil and gas properties for $1.75 billion. Aplt. App. 560, 573.[2] The PSA allowed the purchase price to be adjusted downward or upward based on property defects or benefits discovered by the parties before closing. See id. at 573-79. "Title defects" would decrease the purchase price in favor of BP, and "title benefits" would increase the purchase price in favor of Chesapeake. See id. at 573, 578. The claimed adjustments, however, would have no effect on the purchase price unless they exceeded $35,000,000 (the "aggregate defect threshold"). See id. at 574. All adjustments to the purchase price were to be summarized in a final accounting statement agreed to by the parties within 120 days after closing. Id. at 582.

The PSA contained three arbitration provisions. All disputes related to title defects and benefits were directed to arbitration by consultants familiar with the energy industry ("title arbitration"). Id. at 579. Disputes related to accounting

---

[2] References to "Aplt. App." and "Aplee. Supp. App." refer to the parties' appendices in the merits appeal (Nos. 13-6108; -6122). References to "13-6185 Aplt. App." and "13-6185 Aplee. Supp. App." refer to the parties' appendices in the attorneys' fees appeal (No. 13-6185).

issues were to be submitted to arbitration by an accounting referee ("accounting arbitration"). Id. at 583. Finally, a catch-all provision provided that any dispute "arising out of or relating to" the PSA or its breach would be resolved through binding arbitration. Id. at 561, 609.

After closing, the parties agreed on title defects of $116,234,556. Aplt. App. 478, 709; Aplee. Supp. App. 520 (32:14-18); see Aplt. App. 989.[3] Less the aggregate threshold, the parties agreed BP was owed $81,234,556. Aplt. App. 478. At the same time, disputed title defects and benefits were submitted to title arbitration. BP sought approximately $46 million for disputed title defects, and Chesapeake sought approximately $22 million for disputed title benefits and "credits." Id. at 710.

While the title arbitration was pending, BP submitted a proposed final accounting statement reflecting the agreed title defects of approximately $80 million. Id. at 960. To BP's surprise, Chesapeake responded with an exception report changing the $80 million to $58 million. Id. at 991. When BP asked why Chesapeake seemed to now be going back on the agreed adjustment, Chesapeake responded that it had applied a $22 million offset based on its pending claims in the title arbitration; Chesapeake did not dispute the $80 million in agreed title

_____

[3] The parties initially agreed on $115,799,079.62 in title defects ($80,799,080 after deducting the aggregate threshold), Aplt. App. 989, but that number later increased to $116,234,556 ($81,234,556), see Aplt. App. 709; Aplee. Sup. App. 537. The difference is immaterial for our purposes.

- 4 -

defects, but temporarily withheld the $22 million because it might recover that amount in title arbitration. Aplt. App. 481; Aplee. Sup. App. 524 (46:6-24), (47:13-48:1). As a result, BP did not submit the $22 million to arbitration. Aplt. App. 481.

In an effort to wrap up ongoing accounting arbitration, BP sent a letter to Chesapeake offering to settle the final statement. Id. at 482. It said that the parties had "reached consensus regarding the minimum price adjustment owed to BP which is $59,857,470" and offered to withdraw from accounting arbitration upon payment of that amount. Id. at 673. Chesapeake accepted. Id. at 789.

Though the accounting arbitration ended, the title arbitration continued. The arbitration panel issued an award on December 30, 2009, finding $11,526,434 in title defects (favoring BP), subject to certain conditions, and $3,727,031 in title benefits (favoring Chesapeake). Id. at 1070, 1073. In explanatory comments, the panel noted that it made no determination of whether these amounts exceeded the aggregate threshold, or whether its ruling would actually cause any money to exchange hands. Id. at 1065. If the parties could not agree on the effect of the panel's ruling on the ultimate purchase price adjustment, they could submit their positions on that issue to further arbitration. Id.

Shortly thereafter, BP requested payment from Chesapeake. Id. at 835. Because the $3 million in title benefits awarded to Chesapeake (combined with agreed title benefits) did not exceed the aggregate threshold, Chesapeake received

no price adjustment to offset the $22 million it previously withheld. Id. at 483. Thus BP requested both the $11 million awarded to it in arbitration and the $22 million Chesapeake withheld. Id. at 484. Chesapeake paid the $11 million, but refused to pay the $22 million. Id. at 818. BP then asked the panel to clarify and modify its award and order Chesapeake to pay the $22 million, and requested attorneys' fees as the prevailing party. Id. at 809-10. Chesapeake contested the panel's jurisdiction and claimed it could not entertain BP's request. Id. at 816. Chesapeake also opposed BP's request for attorneys' fees, claiming that Chesapeake, not BP, was the prevailing party. Id. at 817.

On March 11, 2010, the panel issued its second ruling, finding that it retained jurisdiction over the dispute. Id. at 873-75. As to the effect of its prior ruling on BP's claim for $22 million, the panel stated:

> The Panel understands that . . . one or both of the parties understandably withheld . . . payments that might be due to the other party if the withholding party did not prevail with regard to the disputed [title matters] that were submitted to arbitration. . . . [I]t was the intention and assumption of the Panel that, to the extent that the only grounds a party had for withholding payment to the other party for the dollar amount associated with any such matters was that there had been no ruling by the Panel with regard to those issues, the amounts due for such matters would then become due in light of the Panel's decisions.

Id. at 874. The panel stated that if the parties still could not resolve the dispute, they should submit additional briefing. Id. at 875. The panel also determined

- 6 -

that the issue of attorneys' fees should be adjudicated by a district court in an enforcement action. Id. at 873.

Chesapeake continued to dispute the panel's jurisdiction and advised that it would not comply with the briefing schedule. Id. at 876. It also continued to refuse to pay the $22 million. Id. On April 2, 2010, the panel ordered BP to submit a detailed explanation of why it was owed $22 million, id., and BP complied, id. at 878-930. In lieu of a response brief, Chesapeake filed a complaint in Oklahoma state court seeking to confirm and modify the panel's December 30, 2009 award, to vacate all rulings issued by the panel after the December 30, 2009 award, to enjoin the panel from issuing further rulings, and for a declaratory judgment that the panel lacked jurisdiction to adjudicate any further disputes. Id. at 27-56. BP removed to federal court and filed counterclaims seeking fees and a declaration of its entitlement to the $22 million. Id. at 68. The district court later granted BP's motion to stay the litigation pending completion of the arbitration proceedings. Id. at 139-45.

On January 26, 2011, the panel issued its last ruling. The panel found that Chesapeake withheld $22 million from the parties' final accounting pending the outcome of the title arbitration. Id. at 937. The panel held that Chesapeake owed BP $22 million, subject to any defenses Chesapeake might have outside the scope of the arbitration. Id. at 937-38. Adjudication of those contract defenses would require litigation or a separate arbitration. Id. at 938.

The parties filed competing motions to confirm in the district court.  Id. at 146, 199.  BP sought a judgment in its favor of $22,265,302 plus interest and fees consistent with the panel's three rulings.  Id. at 165.  Chesapeake sought to confirm only the panel's December 30, 2009 award deciding the title disputes and maintained that the subsequent rulings were outside the panel's purview.  Id. at 199-201.  The district court agreed.  It stated that to the extent the panel ruled on BP's entitlement to $22 million it went beyond its jurisdiction, though BP's counterclaim on that issue could be adjudicated by the court in the future.  Id. at 248-49.  That order is the subject of BP's cross appeal.

The district court requested a joint proposal from the parties on how to proceed with regard to BP's counterclaim for $22 million and fees.  Id. at 250.  The parties agreed to file cross-motions for summary judgment.  Id. at 251-52.  Both motions were ultimately denied, id. at 439, and a three-day bench trial ensued, id. at 477.  Following trial, the district court found that Chesapeake waived its right to arbitrate the remaining disputes and that Chesapeake's contract defenses failed.  Id. at 487-500.  The court entered judgment in favor of BP for $22,265,302 plus interest.  Id. at 502.  Chesapeake appeals from that judgment.

The district court later granted in part BP's motion for attorneys' fees and costs and awarded $1,403,669.38 against Chesapeake for fees and disbursements.  Id. at 513.  Chesapeake appeals that judgment as well.

Discussion

A.    Chesapeake's Appeal

In its appeal of the district court's decision on the merits, <u>BP Am. Prod. Co. v. Chesapeake Exploration, LLC</u>, CIV-10-519-M, 2013 WL 1397727 (W.D. Okla. Apr. 5, 2013), Chesapeake argues that the district court lacked jurisdiction to adjudicate the dispute beyond confirming the arbitration award, that Chesapeake did not waive its right to arbitrate BP's counterclaim, that BP's counterclaim is barred by res judicata, and that BP's counterclaim is impermissible in the context of a confirmation proceeding.  We address each below.

1.    Jurisdiction and Waiver

Chesapeake argues that the district court's jurisdiction ended when it confirmed the arbitration award, citing <u>Hall St. Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576 (2008), and the terms of the PSA.  First, <u>Hall Street</u> bears no parallel to this case.  In <u>Hall Street</u>, the Supreme Court held the scope of judicial review of an arbitration award is limited by the Federal Arbitration Act and cannot be enlarged by agreement of the parties.  <u>Hall Street</u>, 522 U.S. at 584, 586; <u>see</u> 9 U.S.C. §§ 9-11.  The district court in this case confirmed the arbitration award as provided by FAA § 9 and PSA § 2.2.14, Aplt. App. 579.  The court's adjudication of BP's counterclaim—which the district court found to be outside the scope of arbitration, <u>id.</u> at 248, the panel found both outside the scope of what

- 9 -

was submitted to it, id. at 874, and subject to defenses outside its purview, id. at 938, and which Chesapeake consistently argued "arises solely from matters outside the scope of PSA § 2.2.14 arbitration," id. at 200—was not judicial review of an arbitration award, and so was not subject to the limitations of the FAA. See Hall Street, 522 U.S. at 592.

Chesapeake now argues that BP's counterclaim is relegated to binding arbitration by the PSA. Aplt. Br. 27. In short, Chesapeake's argument is contrary to the position it asserted throughout the whole of this dispute. See Aplt. App. 816. The district court found Chesapeake waived its right to arbitrate the counterclaim; we review that issue de novo, Hill v. Ricoh Americas Corp., 603 F.3d 766, 771 (10th Cir. 2010), and come to the same conclusion.

In assessing waiver, we consider, among other things, whether a party's actions are inconsistent with the right to arbitrate and the extent to which the party invoked and took advantage of litigation. Id. at 772-73. The record before us is replete with Chesapeake's attempts to avoid arbitrating this claim. Chesapeake protested the authority of the panel to adjudicate it, initiated this litigation to prevent the panel from doing so, and expressly agreed to have the issue decided on joint motions for summary judgment. Chesapeake thus waived its right to arbitrate. Its attempt to invoke arbitration at this stage is simply disingenuous. Compare Aplt. Br. 39 (Chesapeake's appellate brief: "Chesapeake has always maintained that BP's $22 million claim was subject to Title

Arbitration required by PSA § 2.2.14.") with Aplt. App. 200 (Chesapeake's motion to confirm: "BP's claim for $22,265,302, arises solely from matters outside the scope of PSA § 2.2.14 arbitration.").

2.    Res Judicata

Next, Chesapeake argues that BP's counterclaim is barred by the companion doctrines of res judicata and arbitration and award.  Aplt. Br. 28-35. The application of claim preclusion is a question of law we review de novo. MACTEC, Inc. v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005).

Chesapeake asserts the counterclaim is precluded because it was not timely submitted to the arbitration panel, and because the panel declined to award BP the $22 million it sought.  As an initial matter, BP's counterclaim was not submitted to the panel at the beginning of arbitration because, at the time, it was not in dispute.  Aplt. App. 481.  When Chesapeake refused to pay the amount it previously withheld, BP immediately submitted the claim to the panel, under protest from Chesapeake.  Id. at 484.  As the panel and the district court both found, BP's counterclaim is preserved.

Moreover, BP's counterclaim is not precluded by res judicata.  There was no final judgment on BP's claim that would have preclusive effect.  See

- 11 -

MACTEC, 427 F.3d at 831.[4]  The panel's December 30, 2009 award specifically stated it decided only the title issues before it and not the effect of those rulings on the amounts ultimately exchanged by the parties.  The panel's later ruling found that BP was likely entitled to the $22 million but reserved judgment because Chesapeake raised defenses outside the panel's purview.  And the district court found that BP's counterclaim remained a live controversy after the award was confirmed.  The claim is not precluded.

      3.     Counterclaims Under the FAA

Finally, Chesapeake argues that BP's counterclaim is not cognizable under the FAA, citing authority from other circuits.  Aplt. Br. 35-37 (citing Booth v. Hume Pub., Inc., 902 F.2d 925, 931 (11th Cir. 1990); Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987)).  In Booth, the Eleventh Circuit concluded it would be inconsistent with the goals of the FAA to allow counterclaims in confirmation proceedings other than those enumerated by FAA §§ 10-11.  Booth, 902 F.2d at 931.  The court expressed concern that allowing counterclaims would change the "summary" nature of confirmation proceedings.  Id. at 931-33.

There is no rule in this circuit prohibiting counterclaims in confirmation

---

[4] Chesapeake addresses the law of claim preclusion of this circuit, Aplt. Br. 34, while BP argues the district court correctly applied the claim preclusion rules of Oklahoma, Aplee. Br. 47.  Both Tenth Circuit and Oklahoma law require a final judgment before a claim may be precluded,   See MACTEC, 427 F.3d at 831; Doyle v. Smith, 202 P.3d 856, 864 (Okla. Civ. App. 2009), and the result is the same under either.

proceedings, and we do not need to consider adopting one now. When Chesapeake initiated this litigation, it sought more than summary confirmation; it asked the court to examine the jurisdiction of the panel and to enjoin it from hearing the parties' dispute. Aplt. App. 56. Allowing BP's counterclaim in that context would not change the nature of the proceeding. See Booth, 902 F.2d at 931-33.

As we find Chesapeake's arguments in appeal No. 13-6108 unpersuasive, the ruling of the district court, BP Am. Prod. Co., 2013 WL 1397727, will be affirmed.

B.     BP's Cross-appeal

BP advises that if we reject Chesapeake's arguments in its appeal, BP's cross-appeal is moot. Aplee. Br. 27 n.11. We agree, and since we reject Chesapeake's arguments, BP's cross-appeal will be dismissed as moot.

C.     Attorneys' Fees

Chesapeake also appeals the district court's order awarding BP $1,403,669.38 in attorneys' fees and disbursements. BP Am. Prod. Co. v. Chesapeake Exploration, LLC, CIV-10-519-M, 2013 WL 3923509 (W.D. Okla. July 29, 2013). Chesapeake offers three theories as to why the district court erred: attorneys' fees could only be awarded in arbitration, and they were not; the district court failed to find BP's requested fees reasonable; and Chesapeake was a prevailing party in the arbitration. We generally review an award of attorneys'

- 13 -

fees for abuse of discretion, but review any underlying legal issues de novo. AeroTech, Inc. v. Estes, 110 F.3d 1523, 1527 (10th Cir. 1997).

1.    Relegation to Arbitration

Chesapeake argues that BP's request for attorneys' fees could only be adjudicated in arbitration pursuant to the PSA. 13-6185 Aplt. Br. 13. Assuming the dispute over attorneys' fees is subject to the PSA's arbitration provisions, Chesapeake's consistent protestations against the authority of the arbitration panel to hear any matters after issuing the December 30, 2009 award have waived its right to arbitrate, as we have already discussed *supra*. See Hill, 603 F.3d at 772-73; 13-6185 Aplt. App. 887 (Chesapeake's submission to arbitration panel: "Chesapeake's position is that the Panel no longer has the jurisdiction to modify or change its Award. For that reason, each party should bear its own respective attorney fees and expenses incident to this arbitration."). Moreover, the record does not support Chesapeake's argument that the arbitration is complete and "[t]he title arbitrators declined to award BP attorneys [sic] fees." 13-6185 Aplt. Br. 13. The panel found the determination of "prevailing party" status for purposes of fees should be determined by the district court. 13-6185 Aplt. App. 963. As the court found, the attorneys' fees issue was not settled in arbitration. See id. at 636. As such, the district court properly adjudicated attorneys' fees.

2.    Reasonableness

Next, Chesapeake argues that the district court erred in failing to find BP's

- 14 -

requested attorneys' fees reasonable. 13-6185 Aplt. Br. 14-17. Chesapeake appears to make three arguments here: that the district court committed legal error by failing to state affirmatively that the requested fees were reasonable, id. at 14, that the fees were not in fact reasonable, id. at 15-17, and that the district court erred in denying Chesapeake's request for a hearing, id. at 17.

First, while the district court did not expressly declare BP's fees reasonable, that holding is implicit in its order. See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). The court was clearly aware of the applicable legal standard, which it noted several times. See 13-6185 Aplt. App. 635-37. And Chesapeake provided virtually no reason to question the reasonableness of BP's fees. In its response to BP's request, Chesapeake asserted that BP had "failed to prove the reasonableness of its requested fees" and that BP "should" determine a reasonable lodestar rate and correct erroneous entries in its submissions. 13-6185 Aplt. App. 476, 477. But Chesapeake provided no evidence that the lodestar rate BP provided was unreasonable, and did not claim any particular entries were incorrect, aside from a single entry that "appear[ed]" in error. Id. at 478. Meanwhile, BP provided affidavits from its two lead attorneys detailing the hours expended, the services performed, the rate of each attorney, and each attorney's level of experience. Id. at 346-450. Given that Chesapeake made no effort to rebut BP's showing of reasonableness, the district court had little to make explicit. Cf. Robinson v. City of Edmond, 160 F.3d 1275,

1281 (10th Cir. 1998) (stating a claimant's lodestar calculation is entitled to a presumption of reasonableness).

Second, on appeal Chesapeake identifies various entries in BP's fee submissions it asserts are inappropriate. If Chesapeake means to challenge the reasonableness of these entries, it cannot, because it failed to raise these arguments in the district court. See Singleton v. Wulff, 428 U.S. 106, 120 (1976). Even if we were to consider them, we review the district court's finding of reasonableness for abuse of discretion, Robinson, 160 F.3d at 1280, and Chesapeake has failed to show the district court's fee award was other than well within its discretion.

Third, Chesapeake argues the district court erred in denying it a hearing on fees. We review the district court's decision to rely on affidavits and the case record rather than hold an evidentiary hearing for abuse of discretion. Michael A. Cramer, MAI, SRPA, Inc. v. United States, 47 F.3d 379, 382 (10th Cir. 1995). Chesapeake cites the above entries as evidence that a hearing was warranted. Of course, because the district court was not made aware of these errors, we will not consider them. Chesapeake offers no evidence to support the notion that it "believed" these errors warranted a hearing at the time it requested one, as it asserts now. 13-6185 Aplt. Br. 17. The record reflects that Chesapeake requested a stay of the attorneys' fees determination pending appeal or a hearing because it wanted more time to review BP's considerable time records. 13-6185 Aplt. App.

471, 478.  But it was incumbent on Chesapeake to attempt a review of BP's

submissions and make substantiated objections in the time allotted to it.  Because

it failed to do so, Chesapeake was not entitled to an evidentiary hearing.  See

Sheets v. Salt Lake Cnty., 45 F.3d 1383, 1391 (10th Cir. 1995) (citing Blum v.

Stenson, 465 U.S. 886, 892 n.5 (1984)).  The district court did not abuse its

discretion in declining Chesapeake's request for a hearing.

### 3.      Prevailing Party

Chesapeake also challenges the district court's finding that BP was the

"prevailing party" in the arbitration.  13-6185 Aplt. Br. 18-21.  Under the terms

of the PSA and Oklahoma law, attorneys' fees are awarded only to the prevailing

party.  13-6185 Aplt. App. 694-95; Okla. Stat. tit. 12, § 936(A).  The parties agree

that Oklahoma law governs the award of attorneys' fees and the prevailing party

determination.  See 13-6185 Aplt. Br. 20; 13-6185 Aplee. Br. 21.  Under

Oklahoma law, "the concept of 'prevailing party' is result oriented."  Atwood v.

Atwood, 25 P.3d 936, 948 (Okla. Civ. App. 2001).  The prevailing party is the

party that succeeds on the merits of the claim and has affirmative judgment

rendered in its favor.  Id. (citing Underwriters at Lloyd's of London v. N. Am.

Van Lines., 829 P.2d 978, 981 (Okla. 1992); Okla. Oil & Gas Exploration Drilling

Program 1983-A v. W.M.A. Corp., 877 P.2d 605, 611 (Okla. Civ. App. 1994)).

We review the district court's determination that a party did or did not prevail for

abuse of discretion.  <u>Arkla Energy Res., a Div. of Arkla, Inc. v. Roye Realty & Developing, Inc.</u>, 9 F.3d 855, 866 (10th Cir. 1993).

Chesapeake argues that it, too, was a prevailing party in title arbitration because the panel found in its favor on $3,727,031 worth of title benefit claims and denied some of BP's title defect claims.  13-6185 Aplt. Br. 20.[5]  While Oklahoma law does not preclude a finding that both parties prevailed when each wins on the merits of separate claims, <u>Welling v. Am. Roofing & Sheet Metal Co.</u>, 617 P.2d 206, 210 (Okla. 1980), this is not such a case.  While Chesapeake succeeded on some of its title benefit claims, it received no arbitration award because the value of its successful claims did not exceed the aggregate defect threshold.  Meanwhile, it paid BP $11,526,434 pursuant to the panel's award.  As such, BP was the only party to receive an affirmative judgment in the arbitration. And while Chesapeake successfully defended some of BP's claims, a defense that limits a claimant's recovery but does not result in a judgment for the defendant does not entitle the defendant to prevailing party status under Oklahoma law. <u>Lloyd's of London</u>, 829 P.2d at 981.  The district court did not abuse its discretion in finding that Chesapeake was not a prevailing party in the arbitration.

For these reasons, the judgments below are AFFIRMED.  BP's cross-appeal (No. 13-6122) is DISMISSED.

---

[5]  Chesapeake does not argue that it was a prevailing party in the litigation.

- 18 -