FILED
United States Court of Appeals
Tenth Circuit

May 10, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WINCO FOODS, LLC, an Idaho
company,

      Plaintiff Counterclaim
      Defendant - Appellant,

v.

CROSSLAND CONSTRUCTION
COMPANY, INC., a Kansas company,

      Defendant Counterclaimant -
      Appellee.

Nos. 20-6043 & 20-6108
(D.C. No. 5:18-CV-00175-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** [*]

---

Before **HOLMES**, **BACHARACH**, and **CARSON**, Circuit Judges.

In this appeal, Plaintiff-Appellant WinCo Foods, LLC ("WinCo")

challenges the district court's orders for attorney's fees and bill of costs in favor

of Defendant-Appellee Crossland Construction Company, Inc. ("Crossland").

Specifically, WinCo challenges the district court's determination that WinCo was

not *also* a prevailing party in the underlying dispute, and its consequent denial of

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and 10th Circuit Rule 32.1.

WinCo's motions for attorney's fees and costs.  WinCo also contends that the district court abused its discretion in its award of fees to Crossland because it should have (1) apportioned Crossland's fees, so WinCo would pay only fees and costs associated with Crossland's fee-bearing claim, and (2) reduced the fees awarded to Crossland commensurate with Crossland's limited success at trial.

We conclude that these arguments lack merit.  Only one fee-bearing claim went to the jury, as evidenced by the jury instructions and verdict form, and Crossland was the sole prevailing party on that claim.  Further, the parties' claims were so intertwined that it would be impracticable and unnecessary to separate them and apportion fees.  Finally, the district court appropriately exercised its discretion and considered all relevant factors, including Crossland's limited success, in reducing Crossland's requested fees by twenty percent.  Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's orders for attorney's fees and bill of costs.

**I**

**A**

Crossland was hired by WinCo, a grocery chain, to serve as the general contractor for the on-site work and construction of a new grocery store located at 353 N.W. 39th Street in Oklahoma City, Oklahoma (the "Property").  WinCo and Crossland entered into two written contracts (the "Agreements") that provided the terms under which Crossland agreed to perform its services.

2

Disputes arose between the parties concerning the work performed by Crossland. WinCo alleged various defects and flaws, including that Crossland improperly cured concrete; improperly constructed the Property's storm refuge; ignored directives of the architect of record; delivered a store with miscellaneous defects; and failed to timely complete the store by the date specified in the Agreements. Because of these claimed contractual violations, WinCo withheld a significant sum of money—$850,450.15—from Crossland that was otherwise undisputedly due under the Agreements.

**B**

On February 23, 2018, WinCo filed a complaint against Crossland alleging breach of contract, and seeking a declaratory judgment that payment was properly withheld from Crossland as a result of Crossland's breaches. WinCo sought damages, liquidated damages, the declaratory judgment, and attorney's fees and costs. WinCo amended its original complaint on August 6, 2018, asserting the same causes of action with certain additional factual allegations.[1]

Crossland filed a counterclaim alleging breach of contract, unjust enrichment, and foreclosure of a mechanic's lien. As relevant here, Crossland asserted that it timely and fully completed its contractual obligations, and that

---

[1]     The specific contract provisions allegedly breached were not mentioned in the Complaint or Amended Complaint, but were cited by WinCo in the Final Pretrial Order.

WinCo failed and refused to pay the money it owed for Crossland's "labor, services and materials." Aplt.'s App., Vol. I, at 33 (Crossland's Countercl. Against Winco, filed Aug. 3, 2018).

A jury trial began before the district court on December 5, 2019. WinCo argued that it was entitled to damages totaling $1,232,891.31 and sought a verdict in the net amount of $382,441.16—its total claimed damages, minus the $850,450.15 it had retained. On the other hand, Crossland requested an award of $630,952.15. Crossland had reduced the amount it was seeking from $961,156.04 (at the commencement of litigation) to $850,450.15 (at the beginning of trial) and subsequently to $630,952.12 (at the end of trial). *See WinCo Foods, LLC v. Crossland Constr. Co., Inc.*, No. 18-0175, 2020 WL 1818434, at *2 n.3 (W.D. Okla. Mar. 3, 2020) (unpublished).

The jury was instructed to resolve the parties' competing claims, to net out the monetary damages for the claims, and to determine which party was entitled to recover additional funds from the other. It was also given a general verdict form in which it could select only *one* party, and the corresponding amount that such party could recover. *See* Aplt.'s App., Vol. I, at 204 (Verdict Form, filed Dec. 12, 2019) (instructing the jury to "check one" party, Crossland or WinCo, and "fix damages in the amount of $_____").

On December 12, 2019, the jury returned a verdict in favor of Crossland, concluding it was entitled to damages in the amount of $228,909.33. The record

indicates that the jury initially returned a verdict for WinCo, awarding damages in the amount of $621,540.82—i.e., the $850,450.15 retained by WinCo, minus the $228,909.33 the jury ultimately awarded Crossland. *See id.* (jury verdict form with a check mark selecting WinCo as the prevailing party scratched out and a scratched out amount); *id.*, Vol. III, at 22 (Trial Tr., dated Dec. 12, 2019) (statement by Crossland's counsel indicating that the scratched out amount in favor of WinCo had been in the range of "621[,000]"). However, the district court then instructed the jury to reconsider its award, and "particularly the instruction that has to do with the netting out process," because the awarded amount was "considerably outside the range that anybody had asked for." *Id.*, Vol. III, at 18–20. The jury returned 12 minutes later with its final $228,909.33 verdict for Crossland, apparently having subtracted the $621.540.82 it originally awarded to WinCo from the $850,450.15 contract balance withheld by WinCo.[2] The district court entered judgment in favor of Crossland on December 17, 2019. WinCo did not appeal the judgment.

Both parties timely moved for attorney's fees pursuant to 12 Okla. Stat. § 936, which allows "the prevailing party" to collect attorney's fees in "any civil action to recover for labor or services rendered." WinCo also sought attorney's fees under 12 Okla. Stat. § 939, which similarly provides for prevailing party

---

[2]    It is unclear from the record the jury's reasons for not awarding Crossland its full requested amount.

attorney's fees in breach of express warranty cases. The district court denied WinCo's motion for attorney's fees, but granted in part Crossland's motion for attorney's fees in the amount of $306,018.00—eighty percent of Crossland's requested fees. The district court explained that "[t]here was, in substance, only a single [breach of contract] dispute," on which Crossland was the sole prevailing party based on the jury's verdict. *WinCo*, 2020 WL 1818434, at *1–2. Further, the court concluded that, although there was no basis for apportioning fees because the parties' competing breach of contract claims were, "in substance, opposite sides of the same coin," a twenty percent reduction of Crossland's requested lodestar amount was warranted because the amount Crossland recovered in damages was "significantly less" than the amount it originally sought. *Id.* at *2. WinCo timely appealed from the district court's order regarding attorney's fees.

Subsequently, the Clerk of Court denied WinCo's bill of costs; the denial included a handwritten note explaining that "[WinCo] is not the prevailing party," and cited to the district court's fee order. Aplt.'s App., Vol. III, at 2 (WinCo Bill of Costs Denial, filed June 25, 2020). On the other hand, the Clerk of Court approved Crossland's bill of costs for $18,782.48. The district court subsequently denied WinCo's motion to review and vacate the Clerk of Court's award of costs, explaining that WinCo's bill of costs was properly denied because WinCo was not the prevailing party in the case. WinCo timely filed its appeal as to costs, and the

Tenth Circuit Clerk of the Court consolidated WinCo's appeals for fees and costs on July 20, 2020.

## II

A district court's award of attorney's fees and costs is reviewed for an abuse of discretion, but any legal conclusions underlying the award are reviewed de novo. *See Pound v. Airosol Co., Inc.*, 498 F.3d 1089, 1100–01 (10th Cir. 2007); *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1178 (10th Cir. 2011), *aff'd*, 568 U.S. 371 (2013). A district court abuses its discretion only if it commits legal error, relies on clearly erroneous factual findings, or no rational basis exists in the evidence to support its ruling. *See In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009).

"[I]n this circuit, the matter of attorney's fees in a diversity suit is substantive and is controlled by state law." *Boyd Rosene and Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997). Accordingly, we apply Oklahoma state law.

## III

On appeal, WinCo challenges the district court's denial of its motions for attorney's fees and bill of costs. It makes two main arguments for reversal. First, it contends, the district court erred in failing to recognize WinCo as a co-prevailing party entitled to attorney's fees. Second, the district court abused its discretion in awarding excessive attorney's fees and costs to Crossland. We

address each argument in turn, and conclude that the district court's award of attorney's fees and costs was appropriate.

## A

We first address WinCo's argument that the district court erred in failing to recognize WinCo as a co-prevailing party also entitled to an award of attorney's fees and costs. We review the district court's determination that WinCo was not a prevailing party for abuse of discretion. *See BP Am. Prod. Co. v. Chesapeake Expl., LLC*, 747 F.3d 1253, 1262 (10th Cir. 2014) ("We review the district court's determination that a party did or did not prevail for abuse of discretion.").

WinCo does not dispute the district court's finding that Crossland prevailed in the instant action, but contends that, as a matter of Oklahoma law, WinCo is *also* a prevailing party and therefore entitled to fees and costs. In advancing its position, Winco challenges the district court's finding on two grounds. First, WinCo argues the district court incorrectly found that the underlying case was based on competing breach of contract claims, rather than separate breach of contract and breach of warranty claims. Specifically, WinCo contends that the litigation claims were at issue under two Oklahoma fee-bearing statutes—12 Okla. Stat. § 936, for recovery of labor and services, and 12 Okla. Stat. § 939, for breach of warranty. Because it prevailed on the breach of warranty claim, WinCo asserts, it was entitled to attorney's fees as a co-prevailing party under Oklahoma caselaw. Second, WinCo argues that, because the jury substantially reduced the

damages awarded to Crossland from its requested $961,156.04 to $228,909.33, WinCo was also a co-prevailing party entitled to fees under 12 Okla. Stat. § 936. Based on these two alleged errors, WinCo argues that we should reverse the district court's orders on fees and costs.

12 Okla. Stat. § 936 authorizes the collection of attorney's fees by the prevailing party in cases for recovery for labor and services rendered, including breach of contract cases for nonpayment. *See* 12 Okla. Stat. § 936 ("In any civil action to recover for labor or services rendered . . . the prevailing party shall be allowed a reasonable attorney fee to be set by the court . . . ."). Similarly, 12 Okla. Stat. § 939 authorizes the collection of attorney's fees by the prevailing party in breach of warranty cases. *See id.* § 939 ("In any civil action brought to recover damages for breach of an express warranty . . . the prevailing party shall be allowed a reasonable attorney fee to be set by the court . . . ."). Under Oklahoma law, "the concept of 'prevailing party' is result oriented." *Atwood v. Atwood*, 25 P.3d 936, 948 (Okla. Civ. App. 2001). In most cases, only a single party prevails. However, in cases involving separate claims under multiple fee-bearing statutes, the Oklahoma Supreme Court has concluded that there may be more than one prevailing party. *See Tomahawk Res., Inc. v. Craven*, 130 P.3d 222 (Okla. 2005); *Midwest Livestock Sys., Inc. v. Lashley*, 967 P.2d 1197 (Okla. 1998).

As to WinCo's first argument—that it litigated claims under two fee-bearing statutes, 12 Okla. Stat. § 936 (recovery for labor and services) and 12 Okla. Stat. § 939 (breach of warranty), and prevailed on the latter—WinCo's premise is flawed.  Simply put, there was no breach of warranty claim at issue here to trigger the application of 12 Okla. Stat. § 939.  Rather, the parties presented competing breach of contract claims, under the same contract, which implicated only 12 Okla. Stat. § 936.  Thus, the sole party to receive a favorable verdict and judgment, Crossland, was entitled to recover under 12 Okla. Stat. § 936.

Indeed, WinCo's position is fatally belied by the jury instructions and verdict form in this case.  These reflect that the parties' competing breach of contract claims—and only those claims—were submitted to the jury.  The instructions provided lengthy and detailed guidance regarding the parties' breach of contract claims, for example, instructing the jury as to "Elements of Plaintiff's Breach of Contract Claim," "Elements of Defendant's [Breach of Contract] Counterclaim," "Breach of Contract," "Substantial Performance," and to interpret the "[e]ntire contract" "as a whole."  Aplt.'s App., Vol. I, at 183–87 (Dist. Ct.'s Instructions to the Jury, filed Dec. 12, 2019).  By contrast, no instructions were provided as to any purported breach of warranty claim.  The instructions further stated, in relevant part:

10

## SUMMARY OF CLAIMS

This is a **breach of contract case** arising out of a construction dispute. . . . WinCo alleges Crossland is not owed anything, and that Crossland owes WinCo money damages over and above the amounts it has retained and left unpaid, because any monies that might otherwise be due to Crossland are more than offset by damages that Crossland owes to WinCo as a result of Crossland's alleged breaches of the contract. Crossland, on the other hand, contends the amount it is owed under the contract exceeds any offsets or damages that WinCo might be entitled to recover by reason of any deficiencies in the performance of the contract.

. . .

## GENERAL MEASURE OF DAMAGES

If you **decide for plaintiff WinCo on its claim for breach of contract**, you must then fix the amount of its damages. This is the amount of money that is needed to put it in as good a position as it would have been if the contract had not been breached. In this case, the amount of damages would be the amount of losses and expenses that WinCo reasonably incurred in order to resolve the claims arising out of Crossland's performance or omissions under the contract. . . .

If you **decide for defendant Crossland on its claim for breach of contract**, you must then fix the amount of its damages. This is the amount of money that is needed to put Crossland in as good a position as it would have been if the contract had not been breached. In this case, the amount of damages would be the price stated in the contract that has not been paid. **However, if you decide defendant Crossland is entitled to recover on its breach of contract claim based upon substantial performance**, the amount of damages would be the full price stated in the contract [$850,450.15] that has not already been paid less the cost of correcting any omissions, deviations or defects defendant Crossland caused.

**Finally, because both parties are claiming breaches by the other party to the same contract**, it will be necessary for you to resolve those claims and arrive at a final, or net, number which

11

accounts for your resolution of the various disputed issues. In doing so, you should keep in mind that the negotiated contract price was $10,364,879.70. That amount is undisputed. It is also undisputed that WinCo has made payments of $9,796,860.98 under the contract, and that $850,450.15 of the contract amount has been retained by WinCo, subject to resolution of the outstanding issues. Therefore, in order for you to make an affirmative award of damages to WinCo in this case, you must conclude that the amount of WinCo's damages due to Crossland's breaches exceeds the amount of $850,450.15, and any judgment for WinCo would be only for the excess of those damages over the contract amount still unpaid. If, on the other hand, you conclude, after deducting for any damages caused by breaches shown to have been committed by Crossland, that there is still money owed to Crossland under the contract, then your verdict should be for Crossland in that amount.

**The verdict form will ask you to determine the party, WinCo or Crossland, which you conclude is ultimately entitled to recover additional funds from the other** after you have resolved and netted out the competing claims.

*Id.* at 173, 192–93 (emphases added). Thus, the jury was asked to return only a general verdict in favor of *one* party after netting out the amounts related to the parties' competing breach of contract claims. Notably, WinCo had ample opportunity to object to the jury instructions and request a specific breach of warranty instruction. It did not do so.

More broadly, the jury instructions and verdict form reflect that "[t]here was, in substance, only a single dispute (albeit with multiple underlying factual issues) and a single prevailing party here." *WinCo*, 2020 WL 1818434, at *1. The record reflects that the parties asserted competing claims for money damages under the same Agreements, based on the same underlying facts. WinCo argued

that Crossland's work was deficient and untimely; Crossland claimed that the same work met all appropriate standards and that any delays were not its fault. These claims, as the district court observed, were, "in substance, flip sides of the same issue—did Crossland's performance meet contract standards or not?" *Id.* In this context, WinCo's attempt to recast its breach of contract claim as a breach of warranty claim is unavailing.

Nor does it alter our analysis that the Final Pretrial Report made passing reference to a warranty provision in one of the Agreements. Specifically, WinCo's Preliminary Statement "allege[d] that [Crossland] breached the parties' contract in four [] separate ways": (1) failing to pay WinCo $5,000 per day for each day delivery was delayed; (2) failing to build a storm shelter in accordance with the parties' specifications and free from defects; (3) failing to wet cure all concrete flooring in accordance with the contract; and (4) failing to replace a broken waterline and be on site during the store opening. Aplt.'s App., Vol. I, at 58–59 (Final Pretrial Report, filed Nov. 18, 2019). In support of each purported breach, WinCo provided, without elaboration or explanation, an inexhaustive list of citations to "portions of the contract applicable to [each] claim"—one of which was Section 3.5, a portion of the General Conditions Agreement obligating Crossland to warrant its work.[3] *Id.*

---

[3]        Specifically, Section 3.5 of the General Conditions Agreement
                                                                    (continued...)

13

But a passing, boilerplate reference to a warranty provision does not transform this case into one for a breach of warranty. WinCo did not plead a breach of warranty claim against Crossland,[4] and the Final Pretrial Report, taken as a whole, unequivocally characterizes the matter as a breach of contract case. *See, e.g.*, *id.* at 58 (Winco's Preliminary Statement of the Final Pretrial Report, beginning with, "This is a breach of construction contract case."); *see also* Aplee.'s Resp. Br. at 14 (noting that "WinCo does not even use the term 'warranty' in the Final Pretrial Report"). If WinCo intended to assert a separate breach of warranty claim, it was required to do so with "specificity and clarity" in the Final Pretrial Report. *Wilson v. Muckala*, 303 F.3d 1207, 1215–16 (10th Cir. 2002). Yet it did not do so. Thus, the district court correctly found that Winco's

---

[3](...continued)
provides:

> The Contractor warrants . . . . that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work [that] the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective.

Aplt.'s App., Vol. I, at 233 (Ex. 1 to Winco's Mot. for Attorney's Fees, filed Dec. 31, 2019).

[4]     The Complaint and Amended Complaint present a cause of action for breach of contract, but they neither explicitly allege breach of warranty nor cite the warranty provision of the Agreements.

"belated effort to turn its claim into a warranty claim within the meaning of 12 Okla. Stat. § 939 is unpersuasive." *WinCo*, 2020 WL 1818434, at *2 n.2.[5]

The Oklahoma Supreme Court's decisions in *Midwest Livestock* and *Tomahawk*, on which WinCo relies heavily, are entirely consistent with our result here. They show that two parties can prevail upon *different claims*, each of which invokes a different fee-bearing statute—not, as here, a single claim under one fee-bearing statute where a verdict and judgment are issued in favor of only one party.

In *Midwest Livestock*, a dispute arose between a property owner and a contractor, leading the property owner to withhold payment to the contractor. 967 P.2d at 1198. The contractor stopped working and filed a mechanic's lien for $110,304.75, the amount due on the contract; the property owner claimed $475,000 in damages. *Id.* Both parties also sought attorney's fees as the prevailing party under 12 Okla. Stat. § 936 (contract for labor and services), 12 Okla. Stat. § 939 (breach of express warranty), and 42 Okla. Stat. § 176

---

[5] Even if we were to conclude that WinCo had presented a breach of warranty claim, however, the record provides no support for WinCo's assertion that it prevailed on such a claim. At bottom, WinCo's theory is that the jury's reduction of Crossland's recovery necessarily reflects WinCo's success on its purported breach of warranty claim. But numerous contractual clauses were at issue in this litigation, and WinCo also sought $715,000 in liquidated damages from Crossland stemming from the delay. Given the jury's general verdict, it is impossible to know whether to attribute the offset to liquidated damages, Crossland's breach of a different contractual provision, or, as WinCo speculates, breach of warranty.

(mechanic's lien). *Id.* An arbitrator awarded the property owner $99,722 on its claim for breach of contract, defects, and other related matters, and also awarded the contractor $110,304.75, the full amount of its mechanic's lien claim. *Id.* The arbitrator then awarded the property owner attorney's fees and denied the contractor's claim for attorney's fees, which the district court and Court of Civil Appeals affirmed, reasoning that the property owner was ultimately required to pay less than the amount due on the contract. *Id.* at 1198–99. The Oklahoma Supreme Court reversed, concluding that there were two prevailing parties and that both were entitled to attorney's fees based on their respective fee-bearing statutes: the property owner prevailed on the breach of contract claim, and the contractor prevailed on its mechanic's lien. *See id.* at 1199. Accordingly, each party could recover its attorney's fees from the other. *Id.*

Notably, in so holding, the Oklahoma Supreme Court in *Midwest Livestock* analogized the case to its previous decision in *Welling v. American Roofing Co.*, 617 P.2d 206 (Okla. 1980). There, the court considered a dispute between homeowners and a roofing subcontractor who failed to properly install a roof, causing rain damage to the homeowners' property. *Id.* at 208. The court held that *both* parties prevailed in the case and were thus entitled to attorney's fees: the homeowners prevailed on the roofer's mechanic's lien claim, which was untimely, entitling them to fees under 42 Okla. Stat. § 176; but the roofer prevailed on a theory of unjust enrichment which entitled it to fees under 12 Okla. Stat. § 936.

16

*Id.* at 210.  Accordingly, the court concluded that "plaintiffs should recover their attorney fees from defendant, and defendant should recover its attorney fees from the plaintiffs."  *Id.*

And, as for the other case on which Winco heavily relies—*Tomahawk*—there, a contractor sued homeowners on a residential construction contract and for foreclosure of its mechanic's lien, while the homeowners counterclaimed for, among other things, breach of contract.  130 P.3d at 223.  A jury awarded the contractor $47,798.20, the full amount of its mechanic's lien, and awarded the homeowners $17,798.20 on their breach of contract counterclaim.  *Id.*  The district court entered judgment reflecting the jury verdicts for both parties and then, offsetting the award to the contractor against the award to the homeowner, ordered that the homeowners pay the contractor the $30,000 difference.  Both parties subsequently sought attorney's fees as prevailing parties on their claims.  *Id.*

The district judge awarded attorney's fees and costs to only the contractor, and the Court of Civil Appeals affirmed.  *Id.*  The Oklahoma Supreme Court reversed, finding that both parties had prevailed under the Oklahoma Supreme Court's rulings in *Welling* and *Midwest Livestock*.  *Id.* at 223–24.  The contractor was entitled to attorney's fees under Oklahoma's lien statute, 42 Okla. Stat. § 176, for foreclosure of its mechanic's lien, and the homeowners were entitled to

17

attorney's fees under 12 Okla. Stat. § 936 for their breach of contract counterclaim. *Id.* at 224.

*Tomahawk* and *Midwest Livestock* involved two discrete, fee-bearing statutes, and each party prevailed on a separate, fee-bearing claim. By contrast, only one fee-bearing claim, for labor and services rendered, *see* 12 Okla. Stat. § 936, was at issue here—and Crossland alone prevailed on it.

Finally, to the extent WinCo argues that it *also* prevailed on its breach of contract claim and is therefore entitled to fees pursuant to 12 Okla. Stat. § 936, it is wrong. WinCo repeatedly refers to the supposed $621,540.82 damages award in its favor, *see, e.g.*, Aplt.'s Opening Br. at 9–10, 16, 23, asking us to conclude that the jury's decision to only award to Crossland $228,909.33 of its claimed damages of $850,450.15 necessarily reflects a $621,540.82 verdict in favor of WinCo. But a reduction of damages to the prevailing party is not necessarily the equivalent of the adverse party prevailing on a claim.[6] And because the jury instructions and verdict form aggregated the issues, we cannot know on which, if any, issues the jury found for WinCo. *See* Aplt.'s App., Vol. I, at 193 ("The verdict form will ask you to determine the party, WinCo or Crossland, which you conclude is ultimately entitled to recover additional funds from the other after you

---

[6]    As Crossland observes, WinCo's position, taken to its logical conclusion, would mean that "a party seeking payment for labor or services must always recover 100% of its contract balance to be the sole 'prevailing party' under 12 O.S. §936." Aplee.'s Resp. Br. at 22.

18

have resolved and netted out the competing claims."). It is not for us to speculate as to the reasoning behind a general jury verdict. *See Union Pac. R. Co. v. Lumbert*, 401 F.2d 699, 701–02 (10th Cir. 1968); *cf. Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983) ("It is well settled that a verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it."); *accord Nanodetex Corp. v. Defiant Techs.*, 349 F. App'x 312, 320 (10th Cir. 2009) (unpublished).

In sum, the jury concluded that Crossland was owed money by WinCo for its unpaid labor and services. Crossland, therefore, was the only prevailing party under the only fee-bearing statute at issue, 12 Okla. Stat. § 936, based on the verdict and judgment in its favor for recovery of unpaid labor and services. It is entitled to reasonable attorney's fees—and, consequently, costs—and WinCo is not.

**B**

We next turn to WinCo's argument that the district court abused its discretion in determining the amount of attorney's fees awarded to Crossland. WinCo presents two independent reasons to hold that the district court's fee award constituted an abuse of discretion. First, WinCo avers that the district court should have apportioned Crossland's award between work associated with Crossland's admittedly fee recoverable claim for unpaid labor and services, and work associated with WinCo's breach of contract claim (i.e., pertaining to

19

delivery of non-conforming and late work rather than unpaid labor and services), which did not fall within the purview of 12 Okla. Stat. § 936 and, accordingly, for which fees were not recoverable. Second, WinCo argues that the amount of fees awarded to Crossland should have been further reduced based on Crossland's limited success in litigation, as evidenced by the difference between Crossland's requested damages and the jury's ultimate award. We reject both of WinCo's arguments, and hold that the district court did not abuse its discretion in determining the amount of fees to which Crossland is entitled.

As to apportionment, under Oklahoma law as a general matter, "[a]n attorney fee award is recoverable to a prevailing party only for the work attributable to a claim for which such fees are statutorily recoverable." *Lee v. Griffith*, 990 P.2d 232, 233 (Okla. 1999). Accordingly, courts typically apportion attorney's fees between claims for which attorney's fees are recoverable and those for which they are not. *See Sisney v. Smalley*, 690 P.2d 1048, 1052 (Okla. 1984). However, Oklahoma courts have recognized an exception to the general rule of apportionment under certain circumstances, "such as when a lawsuit consists of closely interrelated claims" such that it is impracticable and unnecessary to completely segregate fee-bearing from non-fee bearing claims. *See Silver Creek Invs., Inc. v. Whitten Const. Mgmt., Inc.*, 307 P.3d 360, 366 (Okla. Civ. App. 2013).

WinCo is correct that the parties litigated both a fee-bearing claim

20

(Crossland's claim to recover for unpaid labor and services) and a non-fee bearing claim (WinCo's breach of contract claim for deficient and untimely work). Normally, only fees for work attributable to the fee-bearing claim would be recoverable. *See Sisney*, 690 P.2d at 1052. Nonetheless, we conclude that the district court's decision *not* to apportion fees was appropriate because, as discussed *supra*, WinCo's claim and Crossland's counterclaim were opposite sides of the same coin. They were therefore so interrelated—in both the nature and amount of work required—so as to make apportionment impracticable and unnecessary.

The reasoning of our unpublished decision in *Arnold Oil Props.*, *L.L.C. v. Schlumberger Tech. Corp.*, 508 F. App'x 715 (10th Cir. 2013) (unpublished), is persuasive in this regard. There, applying Oklahoma law, the court spoke about the exception to the general rule of apportionment of fees:

> While apportionment is the rule, it bears an exception. If a court finds *all* of the time devoted to the alleged non-fee bearing claim (here, [the owner] Arnold Oil's breach of contract claim) "would have been necessarily incurred" in connection with a claim that *is* fee-bearing (here, [the contractor] Schlumberger's breach of contract counterclaim), then apportionment is not required. In this case, the district court expressly held this exception applies, finding Arnold Oil's breach of contract claim and Schlumberger's counterclaim to be "direct corollaries of one another, as reflected in the jury instructions and verdict form utilized at trial." We are given no persuasive reason to doubt this conclusion. . . . As such, apportionment was not necessary.

21

*Id.* at 716–17 (internal citations omitted); *see also Parker v. Genson*, 406 P.3d 585, 589–90 (Okla. Civ. App. 2017) (applying the exception to apportionment).

This case falls squarely within the circumstances contemplated by the exception. Crossland's sole claim was to collect payment for work rendered on the Project, which it alleged was contractually adequate; and WinCo sought to avoid payment for that same work, which it alleged was contractually deficient. Given the nature of the claims, the time that Crossland devoted to defending against WinCo's claim would necessarily have been expended in advancing its demand for the full amount of damages for its counterclaim. It thus reasonably follows that the apportionment exception applies because the claims were so intertwined that it would be impracticable and unnecessary to separate them and apportion fees. *See Schlumberger*, 508 F. App'x at 717. This conclusion is further bolstered by review of the jury instructions and verdict form, as discussed *supra*: as in *Schlumberger*, they reflect that the parties' claims are "direct corollaries of one another." *Id.* (quoting *Arnold Oil Props., L.L.C. v. Schlumberger Tech. Corp.*, No. 08-1361, 2011 WL 3652560, at *2 (W.D. Okla. Aug. 19, 2011) (unpublished)). There was therefore no basis for an apportionment of attorney's fees.

Furthermore, WinCo contends that Crossland's fees should have been further reduced because of Crossland's limited recovery at trial relative to its originally requested amount. More specifically, Winco argues, it was error for

22

the district court to award Crossland eighty percent of its claimed fees where

Crossland only recovered twenty-three percent of its claimed damages, and the

fees awarded to Crossland exceeded Crossland's actual recovery by

approximately $80,000.  It maintains that "reducing Crossland's fee award [to]

23% of Crossland's actual fees—to be consistent with the extent of Crossland's

recovery—would have been appropriate."  Aplt.'s Opening Br. at 28.

Under Oklahoma law, it is well-settled that "the amount of the recovery,

along with the amount sued for, may and should be taken into account by the trial

judge" in determining an attorney's fee award.  *Arkoma Gas Co. v. Otis Eng'g

Corp.*, 849 P.2d 392, 394 (Okla. 1993); *see also Tibbetts v. Sight 'N Sound

Appliance Ctrs., Inc.*, 77 P.3d 1042, 1049 (Okla. 2003) ("[W]e have recognized

the importance of the relationship between the amount sued for in a case seeking

only money damages and the results obtained.").  However, determining the

appropriate amount is not a mechanical exercise.  "[T]here is no mathematical

formula which can be applied in every situation as to gauging the reasonableness

of a fee when considering the relationship between the amount sued for and the

amount recovered." *Tibbetts*, 77 P.3d at 1049.  Rather, courts have broad

discretion in reaching an equitable reduction of the lodestar calculation.

That is precisely what happened here.  The district court first calculated the

lodestar fee amount as $382.523.50, by multiplying the attorney hours devoted to

23

the case times the attorneys' hourly rates.[7] *See WinCo*, 2020 WL 1818434, at *2.

It then explained that the lodestar amount may be adjusted based on various

factors, as articulated in *State ex rel. Burk v. City of Okla. City*, 598 P.2d 659,

661 (Okla. 1979)—including the result obtained by counsel, which it recognized

to be a "substantial factor in determining the reasonableness of any attorneys' fee

award." *WinCo*, 2020 WL 1818434, at *2.

Finally, it observed that Crossland had obtained "significantly less" than

the $961,156.04 in damages that it originally sought, warranting some fee

reduction;[8] but, on the other hand, that Crossland's limited recovery was offset by

"the amounts above the retainage which WinCo was seeking as damages, and

which Crossland had to defend against," which rendered "Crossland's recovery,

as a percentage of the matters in issue, [] more significant than it would have been

if compared only to its affirmative request." *Id.* Balancing those considerations,

it reduced the lodestar amount by twenty percent. *Id.*

---

[7]      WinCo does not dispute the lodestar fee amount of $382.523.50 or the numbers underlying that calculation (i.e., Crossland's attorneys' hourly rates or the amount of time expended).

[8]      The district court found that, although at trial Crossland dropped the amount it was seeking from $961,156.04 to $850,450.15 (at the beginning of trial) and then to $630,952.12 (by the end of trial), "for purposes of evaluating the results obtained relative to what it sought, Crossland's initial request for $961,156.04, the amount 'in play' during the period when the various fees were incurred, appears the appropriate point of reference." *WinCo*, 2020 WL 1818434, at *2 n.3.

24

Under these circumstances, there was no abuse of discretion. To the contrary, the district court's approach was proper. It expressly considered both the amount in controversy and the amount recovered, in the context of other case-specific factors. And the court's ultimate fee award bears a reasonable relationship to the amount in controversy and the amount recovered.

WinCo points to an unpublished decision from the Western District of Oklahoma, *Gaedeke Holdings VII Ltd. v. Baker*, No. 11-0649, 2019 WL 5850388 (W.D. Okla. Nov. 7, 2019) (unpublished), to support its position that Crossland's fees should have been further reduced. Even setting aside the categorically limited persuasive value of such district court authority, *Gaedeke* does not undermine our conclusion. In *Gaedeke*, the plaintiffs sought damages in the amount of $1.07 million, but recovered a verdict for only $40,000—approximately 4% of the requested amount. The court calculated a lodestar amount of slightly more than $1 million, but awarded only $106,992 in fees to the plaintiffs. In so doing, the district court explained:

> The reason the court awards a fee as *low* as it does is self-evident. The Oklahoma cases make it plain that, in the inverse logic of involuntary fee shifting where the result obtained is a factor, the losing defendants ought not to be forced to pay a Cadillac price for a Trabant [i.e., a very simple economy car], even when, all things considered, they have reason to be quite pleased with the Trabant.

*Id.* at *6 (footnote omitted).

25

Here, too, the district court expressly took into account the fact that Crossland's recovery was "only 23–24% of its affirmative claim." *WinCo*, 2020 WL 1818434, at *2 n.4. It also factored in relevant case-specific circumstances: "given the amounts above the retainage which WinCo was seeking as damages, and which Crossland had to defend against, Crossland's recovery, as a percentage of the matters in issue, was more significant than it would have been if compared only to its affirmative request." *Id.* at *2. And, accordingly, the court determined that a twenty percent reduction of the lodestar amount was appropriate. While this is a smaller lodestar reduction than in *Gaedeke*, we again emphasize that "there is no mathematical formula which can be applied in every situation as to gauging the reasonableness of a fee when considering the relationship between the amount sued for and the amount recovered."[9] *Tibbetts*, 77 P.3d at 1049. And the fees awarded here were reasonable in light of the circumstances.

Lastly, to the extent WinCo argues that the district court abused its discretion in awarding fees in excess of Crossland's actual recovery, it is incorrect. Oklahoma courts routinely award fees that are greater than the amount recovered by the party—including in *Gaedeke*, in which the fee-to-judgment ratio

---

[9]    More generally, the wide scope of factors that Oklahoma courts are directed to consider when adjusting lodestar amounts suggests that, typically, case-to-case comparisons cannot serve as good barometers for discerning an abuse of discretion. *See Burk*, 598 P.2d at 661 (discussing factors for courts to consider in adjusting lodestar amounts).

was substantially higher than here. *See Gaedeke*, 2019 WL 5850388, at \*5 (concluding that "a fee-to-judgment ratio of 2.67 to 1. . . . is in the reasonable range"); *see also, e.g.*, *Arkoma*, 849 P.2d at 393–95 (affirming trial court's award of $5,500 in fees under 12 Okla. Stat. § 936 where plaintiff recovered only $100); *Sw. Bell Tel. Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1188–90 (Okla. 1987) (awarding $3,000 in attorney's fees on claim that settled for $1,500).

Accordingly, the attorney's fees and costs awarded to Crossland were reasonable in light of Crossland's degree of success.

**IV**

For the foregoing reasons, we **AFFIRM** the district court's orders for attorney's fees and bill of costs.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

27