**NORTHERN NATURAL GAS COMPANY, et al., Plaintiffs,**

v.

**Ralph GROUNDS, et al., Defendants.**

**Malcolm MILLER, Movant–Appellant,**

v.

**FOULSTON, SIEFKIN, POWERS & EBERHARDT, Appellee.**

**Nos. 88–1895, 88–1994.**

United States Court of Appeals, Tenth Circuit.

April 29, 1991.

As Amended June 3, 1991.

---

Frederic Dorwart of Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl. (James D. Bryant of the same firm and Mark G. Ayesh of Ayesh, Docking, Herd & Theis, Wichita, Kan., with him on the brief), for movant-appellant.

Gerald Sawatzky of Foulston & Siefkin, Wichita, Kan., for appellee.

LOGAN, ALDISERT[*] and BARRETT, Circuit Judges.

ALDISERT, Circuit Judge.

Other issues are presented in this case, but central to our decision is the question whether the doctrine of res judicata effectively bars the federal claims of the appellant, Malcolm Miller, because of the Kansas Supreme Court decision in *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 790 P.2d 404 (1990). For purposes of our disposition we shall assume proper jurisdiction here and in the district court and hold that the bar applies: The Kansas state court judgment precludes federal court consideration of Miller's claims.

### I.

Malcolm Miller was a partner in the law firm Foulston Siefkin for many years. In late 1982, the law firm's executive committee recommended his expulsion from the partnership as permitted by the firm's written partnership agreement. Miller withdrew as a partner effective January 1, 1983.

The partnership agreement specified the terms, conditions, and payments available to a former partner. The partnership was on a cash basis, the profits being distributed periodically to partners based upon cash receipts. The agreement did not require any new partner to buy into the partnership and, on leaving the partnership, no lawyer had any interest in or right to accounts receivable or work in progress.

On December 11, 1987, Foulston Siefkin filed a verified application for an award of reasonable attorney fees and litigation expenses. Gerald Sawatzky, a partner, had acted as lead counsel for large classes of lessee producers, who, after years of litigation, prevailed on their claims for recovery of the value of helium extracted and sold by other parties.

This appeal arises out of an ancillary fee proceeding. Miller alleges that his ex-law firm owes him a portion of the fees the firm received from its 20–year litigation in two sets of class action cases that have become known as the Consolidated and the Private Helium Cases.

Miller filed a civil action in Kansas state court on November 30, 1987, seeking, *inter alia,* a share of these fees. On December 24, 1987, he filed a motion in federal district court requesting an award of the same share. In district court, Miller made an alternative motion: He requested the district court to stay disbursement of the attorney fees awarded to Foulston Siefkin until his rights were determined in the previously filed state court action.

We are not strangers to this litigation. Foulston Siefkin first became involved in complex helium litigation in 1963. *See e.g., Brown v. Phillips Petroleum Co.*, 838 F.2d 451, *cert denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Northern Natural Gas Co. v. Hegler*, 818 F.2d 730 (10th Cir. 1987). In what became known as the Consolidated Helium Cases, one of which settled in 1985, the others in 1988, the court awarded attorney fees of approximately $17 million from a fund that had been deposited in the court's registry. The second set of cases, known as the Private Helium Cases, filed in 1971 and 1986, resulted in attorney fee awards of approximately $4.5 million. It was from Foulston Siefkin's share of the attorney fees of the Consolidated Helium Cases that Miller sought an award.

On April 7, 1988, the district court dismissed Miller's motion for a share of the Foulston Siefkin fee award, noting that diversity jurisdiction did not exist because the parties were from the same state. The court also refused to entertain ancillary jurisdiction over the motion. Alternatively, the court held that "[e]ven if ancillary jurisdiction did exist, the Court would decline to exercise that jurisdiction because the state court is able to fully litigate all claims between the parties, while litigation of

[*] Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

those claims in this court would unduly and unnecessarily complicate and delay a final conclusion to these long-pending consolidated helium cases." Order Dismissing Motion of Malcolm Miller at 4; R.O.A., Vol. II, p. 2399.

On May 27, 1988, Miller filed a notice of appeal at No. 88–1895 from the denial of his motion. This date was beyond the 30–day requirement of Rule 4(a)(1), F.R.A.P. On the same day, however, he filed a motion in district court for an extension of time to file notice of appeal, averring "excusable neglect or good cause" as provided in Rule 4(a)(5). The district court denied the motion on June 10, 1988, and Miller has appealed from this denial at No. 88–1994.

In response to a challenge to jurisdiction filed by the appellees, Miller contends that his appeal was nevertheless timely because the notice was filed within 60 days of final judgment, a time period that permits appeals when the United States is a party to the litigation. *See* Rule 4(a)(1), F.R.A.P. He argues that inasmuch as the federal government was an intervenor in the helium cases, his appeal was timely.

Faced with this history, we are confronted with issues dealing with jurisdiction, both of the district court as well as of our own. As stated before, in the view we take of this case, we will assume, without deciding, that proper jurisdiction exists.

While these appeals were pending, the Kansas Supreme Court affirmed the state trial court's judgment denying Miller's claim for a share of attorney fees. The appellees have moved to dismiss the appeals because "all of Miller's claims are necessarily barred by res judicata as a result of the Kansas Supreme Court decision, and hence have become moot." Appellees' Alternative Motion for Summary Disposition at 4. Whether the doctrine of res judicata applies to this case is a question of law; accordingly, the standard of review before us is plenary. *In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir. 1988).

## II.

Federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. In our system of jurisprudence the usual rule is that, once decided in a court of competent jurisdiction, merits of a legal claim are not subject to redetermination in another forum. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 485, 102 S.Ct. 1883, 1899, 72 L.Ed.2d 262 (1982); *Stokke v. Southern Pacific*, 169 F.2d 42, 43 (10th Cir.1948). Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action. *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876). Under collateral estoppel, or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Id.* at 153–154, 99 S.Ct. at 973–74.

Federal courts have also consistently accorded preclusive res judicata or collateral estoppel effect to issues decided by state courts. *Montana v. United States*, 440 U.S. at 153–64, 99 S.Ct. at 973–79; *Angel v. Bullington*, 330 U.S. 183, 184–93, 67 S.Ct. 657, 658–63, 91 L.Ed. 832 (1947). They reason that res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. *See also Younger v. Harris*, 401 U.S. 37, 43–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971).

The doctrine prevents the relitigation of "issues that were or could have been dealt with in an earlier litigation." *Angel*, 330 U.S. at 193, 67 S.Ct. at 662. A judgment in favor of the defendant is con-

clusive, in a subsequent action between the parties on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment. *Restatement (Second) of Judgments* § 17(3) (1982). "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." *Id.,* § 19. Our research has disclosed no suggestion that Kansas courts would not apply res judicata in a perfectly traditional manner.

In 1942, Justice Roger Traynor listed the criteria essential to an understanding of res judicata:

> In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

*Bernhard v. Bank of America Nat. Trust & Savings Ass'n.,* 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942). The Court observed in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971), that "[t]he federal courts found *Bernhard* persuasive." As Judge Hastie stated more than 40 years ago:

> This second effort to prove [the case] is comprehended by the generally accepted precept that a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case.

*Bruszewski v. United States,* 181 F.2d 419, 421 (3d Cir.1950), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

■ Indeed, although the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so by the Full Faith and Credit statute:

> [J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738. *See also Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 193, 61 S.Ct. 513, 517, 85 L.Ed. 725 (1941); *Davis v. Davis,* 305 U.S. 32, 39–40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938). This, then, is the jurisprudential setting to measure the relationship of the final judgment in the state court and Miller's efforts to have the federal courts relitigate his claim for attorney fees.

### III.

The appellant acknowledges the efficacy of these precepts, but seeks to carve out an exception to ruling case law. He seeks refuge in the holding of *Henson v. Columbia Bank and Trust Co.,* 651 F.2d 320 (5th Cir.1981), but we find his argument unpersuasive. That case simply stands for the proposition that if a claim is dismissed because of the statute of limitations in one jurisdiction, the claimant is not precluded from enforcing the claim in another jurisdiction if it is not time-barred there. 651 F.2d at 325. In *Henson,* the plaintiff had filed, in the district court, a timely federal question (Truth in Lending) law suit accompanied by counts sounding in state court usury laws. After the district court declined to accept pendent jurisdiction, Henson filed a similar action in the state court system which was ultimately determined by the state appellate court to be time-barred. When Henson returned to the district court with a request for reconsidera-

tion of his original pendent jurisdiction motion, the district court denied relief. On appeal, the court of appeals held that the district court abused its discretion in denying reconsideration of his timely-filed federal law suit after the state courts decided that his later-filed state court action was time-barred.

## IV.

■ We believe that the matter before us is controlled by the teachings of *Stokke v. Southern Pacific,* 169 F.2d 42 (10th Cir. 1948) that a judgment fairly and regularly entered by a court of competent jurisdiction is a bar under the doctrine of res judicata to a subsequent action between the same parties in the same cause of action. On June 5, 1990, the Kansas Supreme Court affirmed the state trial court's ruling that Miller's claim for fees from his former partners was time-barred, *Miller v. Foulston, Siefkin, Powers & Eberhardt,* 246 Kan. 450, 790 P.2d 404 (1990). As stated by that court, Miller claimed *inter alia,* "a share of the attorney fees the firm received for its 20–year litigation in two sets of class action cases that have become known as the consolidated and the private helium cases." 790 P.2d at 406. The court held that this claim was barred by "the two-year limitation of K.S.A. 1989 Supp. 60–513(a)(3)." *Id.* at 415. It bears emphasis that the time-barred state action in this case was filed almost a month prior to Miller's federal court motion.

■ The general rule is that if the plaintiff brings an action to enforce a claim in one state and the defendant sets up the defense that the action is time-barred in that state, the plaintiff is precluded from thereafter enforcing the claim in that state. Where actions filed in the district court rely on state law, the statute of limitations of the forum determines the limitation period in the federal court. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89

L.Ed. 2079 (1945). *See also Ferens v. John Deere Co.,* 494 U.S. 516, ——, 110 S.Ct. 1274, 1280, 108 L.Ed.2d 443 (1990). Both Miller's federal motion for a share of the attorney fees and his state court action were predicated on rights allegedly assured him under the Foulston Siefkin partnership agreement. We conclude, as did the Kansas Supreme Court, that these claims are to be adjudged by the law of Kansas. We further conclude that the statute of limitations barring Miller's claim in the Kansas court system also bars his later-filed claim in the federal district court.

## V.

■ Appellant advances the argument that the lawsuits at issue here and in the state court differ. He says that here he is attempting to recoup from a fund in which Foulston Siefkin has an interest, whereas in the state court he sought a judgment in personam against the firm. This is a distinction without a difference. The question, as we see it, is whether the second claim grows out of the same transaction, act or agreement and seeks redress for the same wrong. The Restatement of Judgments defines "transaction or series of transactions" pragmatically, by looking at "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trend unit. . . ." *Restatement (Second) of Judgments* § 24(2) (1982).

We have examined both the motion filed in the district court and the state court record and conclude that the underlying transaction is the same, and that accordingly, the district court litigation is "on the same … claim" as contemplated in the claim preclusion bar in favor of the defendants set forth in *Restatement (Second) of Judgments* § 17(3) (1982). Simply put, in both actions, Malcolm Miller sought a portion of fees to be awarded to the Foulston, Siefkin partnership for services rendered in the Consolidated Helium Class Action litigation. We find no difference in his contention that one action sought an in personam judgment and the other sought a portion of a fund deposited in the court's reg-

istry based on the Helium Class Action cases. Applying the test posed by Justice Traynor, we are persuaded: (1) that the issue decided in the state litigation is identical with the one presented in the federal district court; (2) that there was a final judgment by the state's highest court; and (3) that the parties here are the same as those in the state litigation. Because the federal district court must apply the limitation laws of the state in which it is located where an action sounds in state law, *Guaranty Trust Co.*, the federal court action is time-barred by operation of res judicata precepts.

## VI.

But this does not end our inquiry. A jurisprudential housekeeping detail remains. We must now define the particular contours of our mandate. Although we rule in favor of the appellees, we do not affirm the judgment of the district court for the reasons there asserted. In the view we have taken, we have assumed jurisdiction here as well as in the district court. In the posture of this case we have decided to review the trial court's assumption of jurisdiction and its declination to exercise it. Yet, as the foregoing discussion of the Kansas Supreme Court decision suggests, we have based our decision on events that have occurred subsequent to Miller's June 6, 1988 Notice of Appeal at No. 88–1895 from the April 7, 1988, Order dismissing his attorney's fees motion and his June 10, 1988 Notice of Appeal at No. 88–1994.

■ While these appeals were pending, the highest court of the state of Kansas rendered a final judgment on the issue that faced the federal district court here. Generally speaking, an intervening judicial decision entered in a collateral proceeding moots a case where the decision resolved the dispute. *Alton v. Alton*, 347 U.S. 610, 611, 74 S.Ct. 736, 736, 98 L.Ed. 987 (1954) (per curiam) (final divorce decree in Connecticut mooted a divorce action brought in the Virgin Islands); *Lomenzo v. WMCA, Inc.*, 384 U.S. 887, 86 S.Ct. 1907, 16 L.Ed.2d 991 (1966) (per curiam) (judgment of the

Court of Appeals of New York moots the judgment of the district court).

■ The reasons for this precept appear self-evident. When the law that controls a given situation is changed, litigation under the old law generally becomes moot. Cases of this nature depend upon the reasoning, if not the precept, set forth in *United States v. Schooner Peggy*, 1 Cranch 103, 5 U.S. 103, 2 L.Ed. 49 (1801), a prize case. While that case was on appeal, the United States entered into a treaty which disposed of the controversy concerning the vessel. Chief Justice Marshall explained that an appellate court must ordinarily restrict its inquiry to correctness of the decision below. "But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule that governs," he wrote, that law must be applied. *Id.*, 5 U.S. at 110. Generally speaking, a change in controlling law may come about by means of treaty, statute or, as here, by judicial decision. At the time this matter was before the federal district court, the question of Miller's relief in the state courts was still an open question. A final state court decision has now intervened and changed this status from an open question to one settled by the law. The change has come about by judicial decision. The basic inquiry to be made now is whether the controversy has come to an end. If it has, the suit must be dismissed. We determine today that the controversy has already ended.

Appellant challenges the efficacy of *Alton* and *Lomenzo* by relying on *Male v. Atchinson, Topeka & Santa Fe Ry. Co.*, 240 U.S. 97, 36 S.Ct. 351, 60 L.Ed. 544 (1916), but we do not believe that *Male* dilutes the general proposition that a final decision in a collateral proceeding moots another proceeding where all the elements of res judicata are present. Although it is true that a collateral proceeding with res judicata elements was present in *Male*, what the Supreme Court did was merely to affirm the district court's determination that it lacked jurisdiction. 240 U.S. at 101–02, 36 S.Ct. at 353. The Court emphasized that it had no jurisdiction to consider the

mootness issue because its jurisdiction under § 238 of the Judicial Code, then in force, to review a direct appeal from the district court was limited to questions of jurisdiction. *Id.* at 99–101, 36 S.Ct. at 352–53. We perceive that the case at bar fits neatly within classic concepts of res judicata claim preclusion and that *Male* does not diminish this perception.

## VII.

Accordingly, these appeals are moot by operation of the doctrine of res judicata. The district court dismissed the appellant's motions on two bases: It dismissed for want of ancillary jurisdiction; and alternatively, it assumed jurisdiction but declined to exercise it. By our action we AFFIRM the district court's dismissal of the motion for reasons other than that given by the court. We hold that the motion for attorney's fees may now properly be dismissed for mootness.