**FILED**
**United States Court of Appeals**
**Tenth Circuit**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**April 29, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

KENYA WATKINS,

    Plaintiff - Appellant,

v.

GENESH, INC., d/b/a Burger King,

    Defendant - Appellee.

No. 24-3043

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:22-CV-02273-KHV-BGS)**

_____

Aaron C. McKee, McKee Law, L.L.C., Olathe, Kansas, for Plaintiff-Appellant.

Charles D. Lee (Myndee M. Lee with him on the brief), Lee Schwalb, Overland Park, Kansas, for the Defendant-Appellee.

_____

Before **HOLMES**, Chief Judge, **McHUGH**, and **ROSSMAN**, Circuit Judges.

_____

**HOLMES**, Chief Judge.

_____

In *Wilkes v. Wyoming Department of Employment Division of Labor Standards*, 314 F.3d 501 (10th Cir. 2002), we considered whether a final judgment on the merits of an employee's non-Title VII lawsuit against her former employer precluded that employee's subsequent Title VII claims arising from the same

transaction involving the same employer—even where the Equal Employment Opportunity Commission ("EEOC") had not issued a right-to-sue letter for the Title VII claims at the time of the first suit's dismissal. In essence, this appeal presents the same question: in claim preclusion parlance, whether the absence of a right-to-sue letter itself deprived an employee of a "full and fair opportunity to litigate" the employee's Title VII claim in the first suit such that claim preclusion does not attach. Reaffirming the rule in *Wilkes*, we hold that the absence of a right-to-sue letter does not deprive an employee of a full and fair opportunity to litigate the employee's Title VII claim. *See id.* at 505–06.

Here, as in *Wilkes*, Ms. Watkins failed to raise her Title VII claims in her initial suit against her former employer. And as in *Wilkes*, Ms. Watkins's subsequent Title VII claims against that same former employer, arising from the same transaction, are precluded by the final judgment on the merits in the initial litigation. We thus affirm, on claim preclusion grounds, the district court's dismissal of Ms. Watkins's Title VII suit.

Our decision proceeds in four parts. Part I recounts the factual and procedural history underlying Ms. Watkins's Title VII claims. Part II confirms our jurisdiction over this appeal and articulates the applicable standard of review. Part III outlines the applicable law, describes the parties' arguments, and disposes of the question presented. Part IV concludes.

**I**[1]

Defendant-Appellee Genesh, Inc., d/b/a Burger King ("Genesh") employed Plaintiff-Appellant Kenya Watkins, a Black woman, from August 2014 to August 2015. Ms. Watkins alleges, and Genesh denies, that Ms. Watkins's manager verbally, physically, and sexually harassed her in appalling ways. Specifically, Ms. Watkins contends, *inter alia*, that her manager (1) forced her into a freezer and attempted there to have sex with her; (2) groped or attempted to grope her; (3) simulated sex with her while she worked at the drive-thru window; and (4) told Ms. Watkins that he would not promote her until she had sex with him.

In early 2016, Ms. Watkins filed an employment discrimination charge (the "2016 Charge") with the Kansas Human Rights Commission ("KHRC") and the EEOC. Ms. Watkins's 2016 Charge alleged that Genesh had discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 by allowing her to be harassed by her manager and terminating her employment.

Subsequently, according to Ms. Watkins, in December 2018, Genesh admonished her then-employer Cajun Operating Company d/b/a Church's Chicken ("Church's") for hiring Ms. Watkins. Genesh denies these allegations. Following the Church's incident, Ms. Watkins lodged a second EEOC charge (the "2019 Charge") against Genesh. Ms. Watkins's 2019 Charge concerned discrimination and

---

[1] In reviewing the district court's dismissal of Ms. Watkins's complaint, we assume the truth of Ms. Watkins's well-pleaded factual allegations and construe them in the light most favorable to Ms. Watkins. *See Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

retaliation that allegedly occurred between August 2015 (when Genesh allegedly terminated her) and December 2018 (when Genesh allegedly contacted her then-employer, Church's).

In August 2019, Ms. Watkins sued Genesh in the United States District Court for the District of Kansas, bringing a single count of race discrimination under 42 U.S.C. § 1981 (the "2019 Litigation").  At that time, when Ms. Watkins initiated the 2019 Litigation, both her 2016 and 2019 Charges remained pending before the EEOC.  In support of her § 1981 claim, Ms. Watkins reiterated the factual allegations of her 2016 and 2019 EEOC Charges, i.e., that her manager at Burger King sexually harassed her, that Genesh improperly terminated her, and that Genesh retaliated against her by admonishing Church's for hiring her.

Genesh moved to dismiss Ms. Watkins's § 1981 complaint under FED. R. CIV. P. 12(b)(6).  The district court granted Genesh's motion, dismissing the suit and specifically finding that:

> [Ms.] Watkins'[s] allegations do not plausibly support that the harassment was racial or stemmed from racial animosity.  There are simply no allegations of racial harassment. . . .  Indeed, from the allegations, it appears that [Ms.] Watkins specifically complained about sexual harassment to both the police and corporate headquarters and perceived the harassment to be sexually motivated.

Aplt.'s App., at 102 (Mem. & Order, dated Apr. 2, 2021).  Notably, in its order dismissing Ms. Watkins's § 1981 claim, the district court included in the twenty-third footnote the following language:

4

> The Court notes that [Ms.] Watkins stated in her Motion for Leave to Amend the Complaint, filed June 15, 2020, that she has charges pending with the EEOC. . . .  The Court will not delay ruling on Burger King's motion to dismiss in this § 1981 case, which has been pending since August 19, 2019.  Once the KHRC/EEOC's proceedings conclude, [Ms.] Watkins can file her claims for sexual discrimination and/or harassment under Title VII.

*Id.* at 102 n.23 (citation omitted) [hereinafter "Footnote 23"].

Subsequently, in July 2021, the EEOC issued a notice of right-to-sue letter (the "2021 right-to-sue letter") to Ms. Watkins for her *2019* Charge.  Ms. Watkins ultimately decided not to pursue litigation related to her 2019 Charge; in that regard, she allowed the 2021 right-to-sue letter's limitations period to expire.

In April 2022, the EEOC issued Ms. Watkins a Conciliation Failure and Notice of Rights Letter for her *2016* Charge (the "2022 right-to-sue letter").  The 2022 right-to-sue letter explained that "[t]he EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you," and so provided to Ms. Watkins "official notice from the EEOC of the dismissal of [her] charge and of [her] right to sue."  *Id.* at 171 (Conciliation Failure and Notice of Rts., issued Apr. 26, 2022).

Thereafter, in July 2022, Ms. Watkins sued Genesh a second time, raising claims for (1) discrimination and retaliation under 42 U.S.C. § 1981; (2) violation of the Kansas Act Against Discrimination, Kan. Stat. Ann. § 44-1001 *et seq.*; (3) discrimination and hostile work environment under Title VII, 42 U.S.C. § 2000e

*et seq.*; and (4) retaliation under Title VII, *id*. Genesh again moved to dismiss under FED. R. CIV. P. 12(b)(6).

Specifically, Genesh argued that Ms. Watkins's 2022 complaint was "simply a recycled version of an earlier, now dismissed, litigation against [Genesh] in which she recited the same operative facts." Aplt.'s App., at 45 (Def.'s Mot. to Dismiss, dated Oct. 27, 2023). Consequently, Genesh contended, "the Complaint should be dismissed consistent with familiar principles of . . . claim preclusion." *Id.* In the alternative, Genesh pleaded that the district court ought to dismiss the 2022 complaint as untimely, since Ms. Watkins had failed "to bring suit within 90 days after receipt of, or entitlement to, the EEOC right-to-sue letter in the first case," i.e., the 2021 right-to-sue letter. *Id.*

Ms. Watkins acknowledged that her § 1981 claims were precluded and agreed to voluntarily withdraw them. Nonetheless, she maintained that her Title VII claims were properly before the court: notably, she seized on Footnote 23 of the district court's order dismissing her 2019 suit, which, she asserted, "specifically preserved [her] 'claims for sexual discrimination and/or harassment under Title VII' upon receipt of a [right-to-sue] [l]etter." *Id.* at 142 (Pl.'s Resp. to Def.'s Mot. to Dismiss, filed Jan. 17, 2024) (bold typeface, italicization, and underline omitted) (quoting Footnote 23). As to Genesh's timeliness defense, Ms. Watkins responded that she was asserting her Title VII claims "for the first time" based on the 2022 right-to-sue letter. *Id.* at 143.

The district court, however, dismissed as untimely Ms. Watkins's 2022 complaint without reaching the question of claim preclusion.

## II

We have jurisdiction under 28 U.S.C. § 1291.  Because Ms. Watkins abandoned her § 1981 claim before the district court and declined to raise her Kansas Act Against Discrimination claim on appeal, our decision concerns only Ms. Watkins's Title VII claims.

We review the district court's grant of Genesh's motion to dismiss de novo. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Reviewing the dismissal, "we assume the truth of [Ms. Watkins's] well-pleaded factual allegations and view them in the light most favorable to [Ms. Watkins]." *Id.* To survive a motion to dismiss, Ms. Watkins's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

We may affirm the district court's dismissal of Ms. Watkins's complaint "on any basis supported by the record, even if it requires ruling on arguments not reached by the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011); *see Red Hawk*, 493 F.3d at 1177–79 & n.4.  Thus, although the district court declined to reach Genesh's claim preclusion argument, we may affirm on that basis, which both parties discussed in their appellate briefing and at oral argument, and which is supported by the record.

7

**III**

The following part articulates the applicable law (III.A), outlines the parties' arguments (III.B), and then evaluates those arguments by applying the relevant law to the factual and procedural circumstances before us (III.C).  Because we conclude that the district court's dismissal of Ms. Watkins's Title VII claims was justified on claim preclusion grounds, we decline to address the parties' arguments and the district court's findings concerning the timeliness of Ms. Watkins's complaint.

**A**

Claim preclusion, also known as res judicata,[2] prevents a party from "litigating a legal claim that was or *could have been* the subject of a previously issued final judgment."  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (emphasis added) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)).  Three elements must be established for claim preclusion to attach: (1) a final judgment on the merits in a prior action; (2) the identity (i.e., sameness) of parties or their privies in the prior and instant suits; and (3) the "identity of the cause of action in both suits."  *Id.* (quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)); *see Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006).  The Tenth Circuit defines "cause of action" according to the "transactional approach" articulated in the Restatement (Second) of Judgments, under which "a cause of action includes all claims or legal theories of recovery that arise

---

[2]     "For purposes of clarity [the Tenth Circuit] employs the terms 'claim preclusion' instead of 'res judicata.'"  *Wilkes*, 314 F.3d at 504 n.1.

from the same transaction, event, or occurrence." *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *see Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1335–36 (10th Cir. 1988). Under our transactional approach, a party cannot avoid preclusion by repackaging precluded claims "under the rubric of slightly different legal theories" where the "new" and precluded claims stem from the same transaction or occurrence. *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000); *see Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238–39 (10th Cir. 1992) (collecting cases).

Even where the foregoing elements are satisfied, claim preclusion will not attach if the party resisting preclusion "did not have a full and fair opportunity to litigate the claim in the prior suit." *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1243 (quoting *MACTEC, Inc.*, 427 F.3d at 831). "This narrow exception[3] applies only where the requirements of due process were not afforded," that is, "where a party shows 'a deficiency that would undermine the fundamental fairness of the original proceedings.'" *Id.* (quoting *Nwosun*, 124 F.3d at 1257). We evaluate the fairness of the prior proceeding "by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties." *Id.* (quoting *Nwosun*, 124 F.3d at 1257–58).

---

[3] "Whether a full and fair opportunity to litigate is characterized as an element of res judicata, or its absence an exception to the application of the doctrine, is immaterial to the question of whether there was such an opportunity . . . ." *Plotner*, 224 F.3d at 1170 n.4 (citation omitted).

Thus, claim preclusion prevents "parties or their privies from relitigating issues that were or *could have been raised* in the prior action." *Wilkes*, 314 F.3d at 503–04 (quoting *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1467 (10th Cir. 1993)).

Because claim preclusion is an affirmative defense, the proponent of preclusion bears the burden to show that the three preclusion factors are satisfied, and that the "full and fair opportunity" exception is unavailing. *See United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017); *Nwosun*, 124 F.3d at 1257.

**B**

**1**

We now turn to Ms. Watkins's arguments. Ms. Watkins contends that Genesh's claim preclusion defense falls short because the "issues" in her 2019 and 2022 suits "were not 'identical,'" nor was she "given a full and fair opportunity to litigate her Title VII claims in her [§] 1981 lawsuit." Aplt.'s Opening Br. at 9 (quoting *Moss v. Kopp*, 559 F.3d 1155, 1161–62 (10th Cir. 2009)). This argument confuses claim preclusion with issue preclusion—i.e., collateral estoppel.[4] *Moss*

---

[4]     One noteworthy commentator described the distinction between the two doctrines—claim preclusion and collateral estoppel—in the following way:

> Prior judgments may preclude later litigation both as to matters that have actually been litigated and decided and *as to matters that have never been litigated or decided*. It is both conventional and convenient to encourage careful attention to the fundamental differences between these effects by referring to them under distinctive labels. The rules that control efforts to reopen matters that have been decided respond to the obvious desire to avoid repetitive consideration of the very same problems. These rules are commonly described as the rules of issue preclusion or

concerned issue, not claim, preclusion: even the excerpt quoted by Ms. Watkins

states that "*[c]ollateral estoppel* will bar a claim" where the four elements are met.

*Id.* at 17 (emphasis added) (quoting *Moss*, 559 F.3d at 1161).  Thus, Ms. Watkins's

argument that Genesh fails to satisfy the *Moss* factors is beside the point and

unavailing.  So too is Ms. Watkins's contention that her Title VII claims were not

actually "litigated by any tribunal."  Aplt.'s Opening Br. at 19.  Our claim preclusion

---

        collateral estoppel . . . .  The rules that preclude any litigation of
matters that have never been litigated or decided respond to more
complex desires to force the parties to raise these matters in their
first suit on pain of subsequent forfeiture.  These rules defining the
matters that *ought to have been raised* are most conveniently
described as the rules of claim preclusion and defense preclusion.

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE
& PROCEDURE § 4406 (3d ed.), Westlaw (database updated Apr. 2025) (emphasis
added); *see, e.g.*, *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170–71 (1984)
("As commonly explained, the doctrine of collateral estoppel can apply to preclude
relitigation of both issues of law and issues of fact if those issues were *conclusively
determined in a prior action*." (emphasis added)).  We recited the elements of the
collateral estoppel doctrine in *Smith v. Dinwiddie*:

        Collateral estoppel bars the adjudication of a particular
claim in a subsequent proceeding when four elements are met.
Those elements are: (1) the issue previously decided is identical
with the one presented in the action in question; (2) the prior action
has been finally adjudicated on the merits; (3) the party against
whom the doctrine is invoked was a party, or in privity with a
party, to the prior adjudication; and (4) the party against whom the
doctrine is raised had a full and fair opportunity to litigate the issue
in the prior action.

510 F.3d 1180, 1188 (10th Cir. 2007).  Suffice it to say that the collateral estoppel
doctrine only relates to legal issues that were actually decided in the prior
proceeding, and that is not true for the claim preclusion doctrine.

11

analysis does not concern whether a claim was actually litigated but whether it "could have been raised." *Osage Wind*, 871 F.3d at 1087.

Ms. Watkins quickly course-corrects, directing us to one of our claim preclusion precedents: *Osage Wind*. There, we held that "[b]ecause [Appellee] has the burden of proving its affirmative defense of claim preclusion, we will not bar [claimant] from asserting the instant claim unless [Appellee] can show that the claim reasonably could have been raised in the prior lawsuit." *Id.* (citation omitted). According to Ms. Watkins, Genesh fails to make that showing here. Ms. Watkins could not have brought her Title VII claims in the 2019 Litigation, she contends, as they "were not ripe because they were still pending with the EEOC." Aplt.'s Opening Br. at 18. And, as she continues, the district court in the prior proceeding recognized as much, and so "specifically preserved [Ms. Watkins's] Title VII claims in [the] order dismissing [Ms. Watkins's] [§] 1981 claims." *Id.* at 18; *see id.* at 19.

**2**

For its part, Genesh maintains that Ms. Watkins's Title VII claims are precluded because "they arise from the same facts and transaction previously litigated in her earlier racial discrimination lawsuit against Genesh." Aplee.'s Resp. Br. at 4. As Genesh reasons, Ms. Watkins does not raise new and independent claims that were not part of the previous transaction but, instead, "merely repackages the same facts previously asserted under a different legal theory—this time as sex discrimination rather than race discrimination." *Id.* at 10; *see id.* at 9–10 (quoting *Hatch*, 471 F.3d at 1150). And, as Genesh says, Ms. Watkins cannot avoid the

12

preclusive effect of the 2021 dismissal "by simply alleging new legal theories." *Id.* at 10 (quoting *Clark*, 953 F.2d at 1238).

## C

Two elements of claim preclusion—the identity of the parties and a final judgment on the merits—are beyond dispute. "[Ms. Watkins] and [Genesh] were the same, and only, parties in both suits." *Clark*, 953 F.2d at 1238. And the district court's dismissal with prejudice of Ms. Watkins's 2021 complaint constitutes a final judgment on the merits. *See id.* Thus, this appeal implicates only (1) the "identity of the cause of action in both suits," *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1239 (quoting *King*, 117 F.3d at 445), and (2) the availability of the "full and fair opportunity to litigate" exception, *id.* at 1240 (quoting *MACTEC, Inc.*, 427 F.3d at 831 & n.6).

We conclude that our precedential decision in *Wilkes* controls both points. Ms. Wilkes filed an EEOC charge against her employer alleging Title VII violations. *See Wilkes*, 314 F.3d at 503. Before the EEOC issued Ms. Wilkes a right-to-sue letter, she sued her employer under the Equal Pay Act. *Id.*; *see* 29 U.S.C. § 206(d). The equal pay litigation terminated after Ms. Wilkes accepted a FED. R. CIV. P. 68 settlement offer, judgment was entered, and Ms. Wilkes filed her satisfaction of judgment. *Wilkes*, 314 F.3d at 503. After the EEOC issued a right-to-sue letter for Ms. Wilkes's Title VII claims, Ms. Wilkes sued her employer again, this time under Title VII. *Id.*

The district court deemed Ms. Wilkes's Title VII claims precluded and granted summary judgment for the employer. *Id.* Ms. Wilkes appealed, arguing that "since she had not yet received a right-to-sue letter from the EEOC, she was statutorily prohibited from raising her Title VII claims in her first lawsuit and, therefore, should not be barred from raising those claims in a subsequent lawsuit." *Id.* Ms. Watkins pursues a virtually identical theory here.

Reviewing the district court's summary judgment decision de novo, we affirmed in *Wilkes*. 314 F.3d at 506. Because the Rule 68 judgment was final, and the parties to both suits were identical, that appeal—like this one—turned on the identity of the cause of action and, in substance,[5] on the "full and fair opportunity to litigate" exception. *Id.* at 504–05. We held, first, that "Wilkes' first and second lawsuits arose from the same transaction—her employment relationship," such that both suits concerned an identical cause of action. *Id.* at 505; *see also id.* at 504

---

[5] We recognize that *Wilkes* does not expressly use the term "full and fair opportunity to litigate" or variations of that term. However, this concept is an established component of our claim preclusion analysis. *See, e.g.*, *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1240; *Plotner*, 224 F.3d at 1170. And "we must endeavor to interpret our cases in a manner that permits them to coexist harmoniously. . . with each other." *United States v. Hansen*, 929 F.3d 1238, 1254 (10th Cir. 2019); *accord Santucci v. Commandant, U.S. Disciplinary Barracks*, 66 F.4th 844, 862 (10th Cir. 2023); *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1246 (10th Cir. 2021). In undertaking this "endeavor," we have no difficulty discerning that, in substance, *Wilkes* was concerned with the satisfaction of this component of the claim preclusion analysis—particularly, insofar as *Wilkes* focused on the same question before us: whether the absence of a right-to-sue letter regarding a Title VII claim in itself should be deemed to have deprived a plaintiff of a full and fair opportunity to litigate that Title VII claim in a non-Title VII lawsuit. *See Wilkes*, 314 F.3d at 505. Otherwise, *Wilkes* would have stopped after determining that there was a final judgment, "identity of parties," and the "same cause of action." *Id.* at 504.

14

("This court repeatedly has held that 'all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes.'" (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000))).

Next, relying principally on the Second Circuit's decision in *Woods v. Dunlop Tire Corp.*, 972 F.2d 36 (2d Cir. 1992), alongside persuasive authority from a half-dozen other circuits,[6] we held that the absence of a right-to-sue letter did not rescue Ms. Wilkes's Title VII claims from preclusion. *Wilkes*, 314 F.3d at 505–06 (citing cases).

We reasoned that Ms. Wilkes was not "statutorily prohibited from raising her Title VII claims" in the initial litigation because she could have (1) requested a right-to-sue letter 180 days after filing her charge with the EEOC and then subsequently amended her complaint to add her Title VII claims, or (2) filed her equal pay claim, sought a stay pending completion of the EEOC investigation, and then amended her complaint to add her Title VII claims upon receipt of her right-to-sue letter. *Id.* at 505–06; *see Stone v. Dep't of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) (discussing *Wilkes*'s holding). Considering these procedural alternatives, we held that the absence of a right-to-sue letter itself did not deprive Ms. Wilkes of a full and

---

[6]    *See Havercombe v. Dep't of Educ.*, 250 F.3d 1, 8–9 (1st Cir. 2001); *Churchill v. Star Enters.*, 183 F.3d 184, 193–94 (3d Cir. 1999); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032–33 (6th Cir. 1998); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225–26 (7th Cir. 1993); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir. 2001); *Jang v. United Tech. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000).

15

fair opportunity to litigate her Title VII claims in the prior lawsuit. *See supra* note 4. Accordingly, we concluded that Ms. Wilkes's judgment in her equal pay lawsuit barred her Title VII claims. *Wilkes*, 314 F.3d at 506. The present case is materially indistinguishable from *Wilkes*.

Significantly, Ms. Wilkes and Ms. Watkins, in precisely the same order:

(1)    Filed an EEOC charge accusing their employer of violating Title VII;

(2)    Sued their employer for conduct arising from the employment relationship, without raising a Title VII claim, while their EEOC charge remained pending;

(3)    Obtained a final judgment on the merits in their non-Title VII suit before the EEOC issued a right-to-sue letter for their Title VII charge; and

(4)    Sued their employer under Title VII for conduct arising from the same employment relationship once a right-to-sue letter issued.

Thus, as in *Wilkes*, Ms. Watkins's "first and second lawsuits arose from the same transaction—her employment relationship." 314 F.3d at 505.[7] And, as in *Wilkes*,

---

[7]    Ms. Watkins makes much of the fact that her "2019 Charge was based on allegations in December 2018 while she worked for a subsequent employer, Church's." Aplt.'s Opening Br. at 20; *see* Aplt.'s Reply Br. at 5 n.10. Thus, she suggests that her 2016 and 2019 Charges stem from separate transactions. But this argument is unavailing: Ms. Watkins's 2019 Charge unambiguously accuses Genesh—not Church's—of violating Title VII.

16

Ms. Watkins's 2019 and 2022 suits concerned an identical cause of action for claim preclusion purposes.[8]  *Id.* at 504–05.

Our decision in *Wilkes* further dictates that Ms. Watkins cannot avail herself of the "full and fair opportunity to litigate" exception to our claim preclusion doctrine. Ms. Watkins claims that the lack of a right-to-sue letter prevented her from raising her Title VII claims in her prior lawsuit.  But we held in *Wilkes* that the lack of a right-to-sue letter itself did not prevent a litigant from pursuing her Title VII claims given the availability of procedural alternatives.  *Id.* at 504, 506.  We discern no reason why Ms. Watkins could not have availed herself of the same or similar procedural alternatives here.

In response to our *sua sponte* request for supplemental briefing concerning the effect of *Wilkes* on this litigation, Ms. Watkins distinguishes *Wilkes* based on (1) Footnote 23 of the district court's order dismissing Ms. Watkins's § 1981 suit; (2) the EEOC's finding of cause with respect to Ms. Watkins's 2016 Charge; (3) the satisfaction of judgment filed by Ms. Wilkes; and (4) the COVID-19 pandemic.

---

[8]    That Ms. Watkins brought her first suit under § 1981 and the surviving part of her second suit under Title VII is of no moment.  *See Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826–27 (8th Cir. 1989) ("[T]he prior judgment in the Title VII suit barred the section 1981 suit against the same parties or their privies."); *see also Nilsen v. City of Moss Point*, 701 F.2d 556, 559–61 (5th Cir. 1983) (en banc) (concluding that a § 1983 claim was precluded by a prior judgment on a Title VII claim).  Here, as in *Clark*, "[t]he only distinction in the two suits involve[s] the legal theories [Ms. Watkins] advance[s]," 953 F.2d at 1239; so, Ms. Watkins is barred from "relitigating issues that were or could have been raised in the prior action," *id.* (quoting *N. Nat. Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991)).

17

None of these distinctions explain why the procedural alternatives available to Ms. Wilkes were not likewise available to Ms. Watkins. Indeed, Ms. Watkins admits that she "did not request a [right-to-sue] letter or ask [the district court] for a stay," but nowhere explains why she *could not* have pursued either option. Aplt.'s Suppl. Br. at 2. Instead, Ms. Watkins argues that her Title VII claims are nevertheless preserved because the *Wilkes* court never held that "these were the only ways that [Ms.] Wilkes could have preserved [her] Title VII claims." *Id.* But hypothesizing *additional* procedural alternatives that Ms. Watkins *likewise* failed to pursue further undermines, rather than bolsters, Ms. Watkins's claim preclusion response. And, as we pointed out at oral argument, nowhere did the *Wilkes* court suggest that putting the district court *on notice* of a related claim—as Ms. Watkins did in the 2019 Litigation— suffices as a procedural alternative to save that claim from preclusion. *See* Oral Arg. at 2:20–3:35.

Ms. Watkins's claim preclusion theory leans *heavily* on Footnote 23 of the district court's order dismissing her § 1981 suit, which Ms. Watkins argues "specifically preserved" her Title VII claims. Aplt.'s Opening Br. at 18; Aplt.'s Reply Br. at 9. Implicit in Ms. Watkins's Footnote 23 argument is the extraordinary contention that a district court can prospectively strip a final judgment on the merits of preclusive effect with respect to certain future claims.[9] But Ms. Watkins offered

---

[9] Certainly, a district court can render a binding judgment that is not "final," and such judgments lack claim preclusive effect; a dismissal *without* prejudice is the paradigmatic example. *See, e.g.*, *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1201–02 (10th Cir. 2003); *Satsky*, 7 F.3d at 1468; *see also Matosantos*

no doctrinal basis or legal authority for this implicit proposition, even when pressed at oral argument. *See* Oral Arg. at 1:49–2:27; 3:35–5:02. In our view, Ms. Watkins's argument that the district court's footnote preserved her Title VII claims from preclusion is wholly lacking in merit.

Finally, it bears mentioning that Genesh has failed to meaningfully engage with key cases in the claim preclusion analysis, particularly *Wilkes*. Although Ms. Watkins has also failed to do so, Genesh's failure is more troubling because claim preclusion is an affirmative defense and, accordingly, its proponent (Genesh) bears the burden to establish the three preclusion factors and to show that the "full and fair opportunity to litigate" exception is unavailable. *See Osage Wind*, 871 F.3d at 1087. More specifically, Genesh has struggled to carry its burden here, never fully articulating *Wilkes*'s determinative import to this court—even when given the opportunity (like Ms. Watkins) to make supplemental arguments and to respond to questions at oral argument. *See* Oral Arg. at 23:20–24:38; Aplee.'s Suppl. Br. at 4.

Notwithstanding Genesh's incomplete arguments, we fully recognize that "we treat arguments for *affirming* the district court differently than arguments for

---

*Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) ("Matosantos argues the dismissal of its complaint in Puerto Rico for lack of personal jurisdiction does not constitute a final adjudication on the merits. . . . In making this argument, Matosantos confuses res judicata (also known as 'claim preclusion') with collateral estoppel (also known as 'issue preclusion'). Although the dismissal for lack of personal jurisdiction in the Puerto Rico district court does not have res judicata effect, it does have collateral estoppel effect, preventing the relitigation of issues decided in the Puerto Rico district court."). But here, the district court's dismissal in the 2019 Litigation under § 1981 was *with* prejudice, and thus final and on the merits. *See Clark*, 953 F.2d at 1238.

19

*reversing* it." *Richison*, 634 F.3d at 1130.  Indeed, "[w]e have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Id.* Consequently, even though Genesh failed to capitalize on *Wilkes*, and the district court did not reach Genesh's claim preclusion defense, we may affirm the district court's judgment dismissing Ms. Watkins's Title VII complaint on claim preclusion grounds because those grounds are well-supported by the record.  And, in an exercise of our discretion, we deem it appropriate and prudent to take this decisional path.[10] *Cf. Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary.").

## IV

For the foregoing reasons, we **AFFIRM** the district court's judgment dismissing Ms. Watkins's Title VII action.

---

[10]    We acknowledge the high demands *Wilkes* places on civil rights plaintiffs.  We also acknowledge how intuitively understandable Ms. Watkins's position is that claim preclusion should not bar the present action.  She permissibly brought the 2019 Litigation before she could legally bring her Title VII claim.  And the district court noted she "can file her claims for sexual discrimination and/or harassment under Title VII" after "the KHRC/EEOC's proceedings conclude." Footnote 23.  But *Wilkes* remains binding precedent, and it instructs that Ms. Watkins had some fair way to bring her Title VII claims in the earlier action, notwithstanding Title VII's exhaustion requirement and the district court's comment.  Under our law, that is enough.